Argued May 3, affirmed as modified May 27, 1976

LANDAUER et ux, *Respondents,*
*v.*
STEELMAN, *Appellant.*

549 P2d 1256

*H. Clifford Looney,* of Swan, Butler & Looney, Vale, argued the cause and filed the briefs for appellant.

*Claud A. Ingram,* of Ingram & Schmauder, John

Day, argued the cause and filed the brief for respondents.

Before O'Connell*, Chief Justice, and McAllister, Denecke, Tongue and Bryson, Justices.

TONGUE, J.

---

*O'Connell, C. J., did not participate in this decision.

## TONGUE, J.

This is an action for damages for interference with the use of an easement in Grant County. The case was tried before a jury, which returned a verdict in favor of plaintiffs for $1,800 general damages and $3,000 punitive damages. Defendant appeals from the resulting judgment.

Defendant's primary contention on appeal is that there was not sufficient evidence to prove any substantial interference with the easement or to prove conduct of such a nature as to support an award of punitive damages.

■ Because of direct conflicts in this testimony it must be kept in mind that after a jury verdict in favor of the plaintiffs this court is required to resolve all conflicts in the testimony in favor of the plaintiffs and that plaintiffs are entitled to the benefit on this appeal of all evidence favorable to them and of all inferences which may be reasonably drawn from such evidence. *Cronn v. Fisher*, 245 Or 407, 416, 422 P2d 276 (1966). The testimony will thus be summarized in accordance with this established rule.

### 1. *Summary of the facts.*

In January 1972 defendant sold part of his property to Stanley Krasowski, "reserving an easement to be used in common," to be "established as soon as a proper highway access can be obtained and the roadway secured." The deed was prepared by defendant's attorney. In June 1972 Mr. Krasowski sold to plaintiffs a part of the property purchased from defendant, including "an easement in common with others entitled to the use thereof" on a "certain existing roadway."

In August 1972 defendant wrote a letter to Mr. Krasowski stating that he was placing a "private road" sign at the entrance of that roadway and that while he recognized Krasowski's personal right to use the road, he did "not recognize your right to grant any use of the

road to third parties, whether purchasers of portions of your property or otherwise." The sign posted by defendant said "No Trespassing. Private property." Defendant did not at that time, however, notify plaintiffs of any objection to their use of the road or prevent its use by plaintiffs or visitors to their property.

Mr. Krasowski testified that he "ignored" that letter because the easement was "supposed to be used in common." In December 1972 he recorded an "easement in common" to "present and future owners" of the property purchased by him from Steelman or "any part or parcel thereof." Mr. Krasowski then sold other portions of his property to Dr. Stahl and to Prairie City Timber Co.

In May 1973 a written agreement was then entered into and signed by defendant and Mrs. Steelman, plaintiffs, Mr. Krasowski and Prairie City Timber. That agreement stated, among other things, that the Steelmans were "in the process of developing a new road across their property" and that "once the new road is completed, Steelmans will give and grant to all the parties herein a common easement for the use of said road and the Eastern end of said existing road [the road subject to this controversy] will be abandoned and released by the parties hereto," except that the Steelmans and Stahls would have an easement for exclusive use of that part of the old road.

According to Mr. Krasowski, it was also agreed verbally that the new road was to be "two cars wide" and was to be graveled. This was denied by Mr. Steelman, who testified that he built the road at a cost of over $2,000 and that it was orally agreed that the cost of building the new road would be divided into four parts, payable by plaintiffs, Krasowski, Dr. Stahl and the Steelmans. He also testified that in June 1973 he notified plaintiffs and the others that the road was completed; that Mr. Krasowski refused to pay his share, and that he sent a bill to plaintiffs for their share, but made no attempt to collect it. Both Mr.

Krasowski and plaintiffs denied any agreement to contribute to the cost of the road.

Defendant did not, however, prepare and record a written easement to plaintiffs for use of the new road, nor did they prepare and record a written release of their easement for use of the old road. Plaintiffs offered testimony that the new road was never completed in that it was not graveled and could not be used by cars when it rained. Defendant never prevented or interfered with the use by plaintiffs of the old road. Plaintiffs offered testimony, however, of incidents involving the use of the old road by two visitors to their property.

One, a Mr. Courtney, delivered heating oil to plaintiffs' house by use of the old road, beginning in 1972. He also tried to use the new road twice, but had "problems." He testified that on one delivery by the old road Mr. Steelman stopped him "on the way out"; asked what he was doing and "got a little nasty" about his use of the road, but did not forbid his use of it, although saying that "something would be done" about it. He also testified that on a second occasion in the fall of 1974 Mr. Steelman stopped him on the way in on the old road and "asked me not to deliver it that day"; that Mr. Steelman was "very congenial about it" and "didn't prevent [him] from using the road"; and that Mr. Courtney "just simply agreed that it was pretty muddy for usage that day."

Mr. Courtney also testified that about 20 days later plaintiffs ran out of oil one night, requiring him to make a "special trip" the next day, on October 24, 1974. He said, however, that the road had probably frozen by then, so as to have made it possible for him to make a delivery of oil after the incident when the road was muddy and prior to October 24. He also testified that he has subsequently used the old road for deliveries to plaintiffs without further incidents and that "nobody has ever really prevented [him] from using that road."

Plaintiffs testified that it was "very cold" on the night of October 23, 1974, when they ran out of heating oil, with a young baby in the house; that it was very uncomfortable for them until the oil delivery was made the next day, and that Mr. Landauer was late to work that day as a result.

The other incident involved an "Avon lady," who testified that she had previously visited plaintiffs' home every two weeks by use of the old road; that on one occasion in the fall of 1974 in going up that road she stopped to let two cars coming down go by; that Mr. Steelman then came up behind her, opened her car door, and asked where she was going. She also testified that when she told him where she was going he said "not on this road"; that it was "his road" and was not for the use of "everybody and anybody"; that she should use the new road and that he was "rude" about it. She then went on up the old road to plaintiffs' house, but told Mrs. Landauer to come to her house for Avon products in the future and that Mrs. Landauer did so for the rest of the winter. She testified, however, that she later used the old road again, without incident.

Plaintiffs testified that "several" other people complained about being stopped on the road, but offered no testimony of other specific incidents and testified that Mr. Steelman had never "directly" denied the use of the road to them. Mr. Landauer also testified that the road is steep and that he was not always able to get up it with a two-wheel-drive vehicle, but used a four-wheel-drive vehicle in the wintertime to meet people who came to visit him and who parked at the bottom of the road.

Mr. Steelman denied some of the testimony offered by plaintiffs. He also said, among other things, that he had completed the new road for use by plaintiffs and that his reason for "inquiring" of people who used the old road was that property had been stolen from his

home and his gates had been left open and his cattle and horses "turned out."

2. *The evidence was sufficient to support a finding by the jury of substantial interference with use of the easement, but was not sufficient to support an award of punitive damages.*

■ As previously stated, defendant contends that plaintiffs failed to prove any substantial interference with their use of the easement over the old road. In support of that contention defendant cites Restatement of Torts § 822, comments *g* and *j* (1939), to the effect that "not every substantial non-trespassory invasion of a person's interest in the use and enjoyment of land is actionable" and that "by substantial invasion is meant an invasion that involves more than slight inconvenience or petty annoyance." Plaintiffs do not disagree with such a rule but contend that "the effects of defendant's acts were substantial."

After reviewing the record, we hold that the evidence offered by the plaintiffs, if believed by the jury, was sufficient to support a finding by it that the effect of defendant's conduct was a substantial interference with plaintiffs' easement for the free and unrestricted use of the old road and to support an award by it of a verdict in such an amount, in the judgment of the jury, as would fairly compensate plaintiffs for the actual damages suffered by them as a result of such interference. Plaintiffs were not only entitled to use the roadway themselves, but to reasonable use of that roadway by business and social visitors without interference by defendant. *See* 3 Tiffany, Real Property 326, § 803 (3d ed 1939). *Cf. Tauscher v. Andruss,* 240 Or 304, 308, 401 P2d 40 (1965).

■ It does not follow, however, that plaintiffs were also entitled to an award of punitive damages. We do not disagree with plaintiffs' contention that "[p]unitive damages are awarded as a deterrent where there has been a violation of societal interests amounting to an aggravated disregard of the rights of the victim" and

that "[t]he use of access to one's home by the homeowner, his guests and tradesmen, free from interference and harassment is of great societal importance."

In our best judgment, however, and assuming the truth of all of the evidence offered by plaintiffs, the nature and extent of the interference by defendant with the use of this easement, under the facts and circumstances of this case, was not a sufficiently "aggravated disregard" of plaintiffs' rights so as to properly support an award of punitive damages. Indeed, we note that this was also the first impression of the trial judge in this case.[1] *See Sumrell v. Household Finance Corp.,* 250 Or 381, 384, 443 P2d 179 (1968), in which we held that the conduct involved in that case was not "sufficiently arbitrary and unconscionable to constitute a grievous violation of societal interests." *See also Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425-27, 435 P2d 306 (1967). *Cf. McGill v. Huling Buick Company,* 259 Or 413, 419-22, 487 P2d 656 (1971).

3. *The trial court did not err in excluding evidence offered by defendant.*

■ Defendant also assigns as error the exclusion by the trial court of testimony to the effect that the new road had been completed "as far as Prairie City Timber is concerned"; that the road was "acceptable" to it; and that in 1975 defendant and Telco, Inc., successor to Prairie City Timber, exchanged easements and releases. It may be that such evidence had some probative value on the question whether the new road had been completed by defendants, but to question whether that dirt road was then in a condition satisfactory for use by logging trucks of Prairie City Timber was, at best, wholly collateral to the issues between the parties to this case. In our best judgment,

---

[1] At the time of defendant's motion for a directed verdict the trial judge stated that "* * * if there is a judgment for punitive damages, I am going to withdraw it, if I have to do it on my own motion."

the trial court, in balancing any such probative value against the possible confusion resulting from the introduction of such a collateral issue, did not abuse its discretion in excluding this evidence. *See* McCormick on Evidence 440-41, § 185 (2d ed 1972).

For reasons previously stated, the judgment of the trial court is affirmed, as modified by deleting that portion of the judgment awarding plaintiffs punitive damages.[2]

---

[2]Defendant also assigned as error the sufficiency of the evidence to establish the existence of the easement claimed by plaintiffs, but withdrew that contention at the time of oral argument.