Argued and submitted in Portland April 4,
Court of Appeals' dismissal vacated;
circuit court judgment affirmed July 12, 1979

# BUDGET RENT-A-CAR OF WASHINGTON-OREGON, INC,
*Petitioner,*
*and*

# OREGON RENTAL ASSOCIATION et al,
*Intervenors,*

*v.*

# MULTNOMAH COUNTY et al,
*Respondents.*

(TC A7607-09640, CA 8925, SC 25873)

597 P2d 1232

John Spencer Stewart, Portland, argued the cause for petitioner. With him on the briefs were F. Gordon Allen and Kobin & Meyer.

John B. Leahy, County Counsel for Multnomah County, argued the cause for respondents. With him on the brief were Martin B. Vidgoff, Deputy County Counsel, and John D. Hoffman, Deputy County Counsel.

LINDE, J.

**LINDE, J.**

Plaintiff, a Washington corporation engaged in the car rental business in Multnomah County, sued to have a county tax on motor vehicle rentals declared invalid under state and federal law. The Circuit Court for Multnomah County sustained the validity of the tax. On appeal, the Court of Appeals held that plaintiff had not alleged or proved facts sufficient to show its standing to attack the tax.[1] 36 Or App 347, 584 P2d 767 (1978). We allowed review and now affirm the decision of the circuit court.

## I. *Plaintiff's Standing.*

The tax was enacted in April, 1976, by Multnomah County Ordinance No. 122, effective July 1, 1976. The relevant provisions are appended to this opinion. Briefly stated, the ordinance imposes on every person who rents a motor vehicle for less than 30 days a tax in the amount of 10 percent of the gross rental fees. It requires the provider of the rental vehicle to collect the tax and to remit the accumulated tax payments to the county at three month intervals. The taxes collected are treated as revenue for the county's general fund except the portion attributable to gasoline furnished with the vehicle, which portion is limited to uses legally permitted for fuel taxes.

██ A plaintiff suing under ORS chapter 28 must show that he is a person "whose rights, status or other legal relations are affected by" the challenged instrument, in this case Ordinance No. 122. ORS 28.020. Under that chapter, as the Court of Appeals stated, plaintiff must show some injury or other impact on a legally recognized interest beyond an abstract interest in the correct application or the validity of a law. *See Gruber v. Lincoln Hospital District,* 285 Or 3, 588 P2d 1281 (1979), *Gortmaker v. Seaton,* 252 Or 440, 450 P2d 547 (1969). Plaintiff in this case relies on the text of

---

[1] The court stated that other similar companies and an association of such companies which had intervened in the suit did make such allegations, but the intervenors did not appeal.

Ordinance No. 122, which it incorporated in its complaint, to show on its face how it affects the plaintiff. Beyond this, the amended complaint alleged only the nature of plaintiff's business and the county's intention to enforce the ordinance according to its terms.

■ We find that the terms of the ordinance sufficiently show that plaintiff's "rights, status or other legal relations are affected" by its enforcement to permit plaintiff to challenge their validity in a declaratory judgment proceeding. The ordinance obliges plaintiff to collect the tax from its customers. Plaintiff must maintain records of the taxes collected, and the amount "required to be collected", whether or not it is collected, is "a debt owed by the commercial establishment to the county." Failure to collect and remit the taxes results in a penalty of 50 percent of the deficiency and potentially leads to criminal penalties. Even if the tax itself is borne by plaintiff's customers, if the tax is not valid plaintiff is spared the burdens of collecting it and the risk of potential controversies over plaintiff's compliance with the ordinance. That is a sufficient effect on plaintiff to satisfy ORS 28.020. Unlike the Court of Appeals, we therefore reach the merits.

## II. *Adoption of the Ordinance.*

■ Plaintiff contends that the enactment of Ordinance No. 122 did not follow statutory procedures. It cites a provision of the state's local budget law, ORS 294.435(1), that requires public notice and hearing on the proposed budget and tax levy and limits the magnitude of changes that may be made without a further publication and public hearing. The tax levied by Ordinance No. 122 was originally proposed at five percent and was doubled before enactment without a further notice or hearing. ORS 294.435(1) provides:

"After the public hearing provided for in subsection (1) of ORS 294.430 has been held, the governing body shall enact the proper ordinances or resolutions to adopt the budget, to make the appropriations and

to determine, make and declare the ad valorem tax levy for each fund. Consideration shall be given to matters discussed at the public hearing. The budget estimates and proposed tax levy of any fund as shown in the budget document may be amended prior to adoption. However, the amount of estimated expenditures for each fund shall not be increased by more than 10 percent thereof, and the amount of the total ad valorem taxes to be certified by the municipal corporation for levy for all funds shall not exceed the amount shown in the budget document as published in accordance with ORS 294.421, prior to the budget meeting, unless the amended budget document is republished as provided by ORS 294.416 or 294.418 and 294.421 for the original budget and another public hearing is held as provided by subsection (1) of ORS 294.430."

The county responds that the motor vehicle rental tax is not an "ad valorem tax levy" within the meaning of this section. We agree.

Plaintiff complains that defendants voted to double the tax to ten percent after all the testimony at the public hearing had opposed even the original five percent tax proposal. But the purpose of legislative hearings is not to bind those responsible for the decision to follow the views expressed at the hearing. If raising public revenue depended upon the appearance of witnesses urging a new tax, not much would be raised.

■ Plaintiff also contends that Ordinance No. 122 had to be submitted to the county's voters for approval under ORS 203.055, which provides:

"Any ordinance, adopted by a county governing body under ORS 203.035 and imposing, or providing an exemption from, taxation shall receive the approval of the voters of the county before taking effect."

The county responds that the section by its own terms applies only to taxes imposed under ORS 203.035. That section is the source of taxing authority for counties that do not have home rule charters, as Multnomah County does, and expressly supplement

other grants of power.[2] Again, we agree. Ordinance No. 122 rests on the general lawmaking authority granted defendants by the voters of Multnomah County in section 2.20 of the county charter, not on ORS 203.035. It did not require a public vote under ORS 203.055.

## III. *Uses of Tax Funds.*

Another attack is leveled against Ordinance No. 122 because it directs the proceeds of the motor vehicle rental tax into the county's general fund. Article IX, section 3 of the constitution limits the use of taxes on the "ownership, operation or use of motor vehicles" to expenditures related to streets and highways and to public parks and other comparable places.[3] Plaintiff

---

[2] ORS 203.035:

"(1) The governing body or the voters of a county may by ordinance exercise authority within the county over matters of county concern, to the fullest extent allowed by Constitutions and laws of the United States and of this state, as fully as if each particular power comprised in that general authority were specifically listed in ORS 203.030 to 203.065.

"(2) The power granted by this section is in addition to other grants of power to counties, shall not be construed to limit or qualify any such grant and shall be liberally construed, to the end that counties have all powers over matters of county concern that it is possible for them to have under the Constitutions and laws of the United States and of this state."

Oregon counties have had power to enact their own charters since the adoption of Or Const art IV, § 10, in 1958. Multnomah County did so effective 1967. ORS 203.035 to 203.065 were enacted in 1973 to give legislative power to counties without "home rule." *See* 37 Op Att'y Gen 319 (1974).

[3] Or Const, art IX, § 3:

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied. The proceeds from any tax levied on, with respect to, or measured by the storage, withdrawal, use, sale, distribution, importation or receipt of motor vehicle fuel or any other product used for the propulsion of motor vehicles, and the proceeds from any tax or excise levied on the ownership, operation or use of motor vehicles shall, after providing for the cost of administration and any refunds or credits authorized by law, be used exclusively for the construction, reconstruction, improvement, repair, maintenance, operation, use and policing of public highways, roads and streets within the state of

asserts and defendants deny that a tax on motor vehicle rentals is a tax on the "operation or use" of the rented vehicles.

■ This question need not be decided in the present proceeding. Article IX, section 3 by its express terms governs the use of the proceeds from the taxes to which it refers, not the collection of the taxes. Plaintiff sought only a declaration invalidating the tax. No demand to limit the expenditure of the proceeds to certain purposes was before the court. The court did not err in declining to invalidate the tax on this ground.[4]

## IV. *Impact on Interstate Commerce.*

The tax is challenged as an impermissible interference with the "Commerce with foreign Nations, and among the several States" whose care the United States Constitution entrusts to Congress and by implication protects against the states to some extent. U. S. Const. art. I, sec. 8(3). Plaintiff phrases its commerce clause attack in three forms: by characterizing the tax as discriminatory against interstate commerce, as an impermissible burden upon it, and as unapportioned. The factual predicate for this attack is that an estimated 75 percent of automobile rentals in Multnomah County take place at the Portland International Airport, mostly by nonresidents engaged in an interstate journey, and that this incidence of the tax primarily on nonresidents was openly stated as one of the reasons for enacting it.

Oregon, including the retirement of bonds for the payment of which such revenues have been pledged, and also may be used for the acquisition, development, maintenance, care and use of parks, recreational, scenic or other historic places and for the publicizing of any of the foregoing uses and things."

[4] The court in *Wittenburg v. Mutton,* 203 Or 438, 280 P2d 359 (1955), sustained a tax as not being upon the ownership, operation or use of a motor vehicle, but the propriety of doing so in a challenge to the tax rather than to the expenditure was not raised or considered by the court in that case.

On this issue our task is to follow in the footsteps of the United States Supreme Court, whether their track is straight or winding. During the early decades of this century, there would have been a substantial likelihood that a state tax imposed on the rental of vehicles used in the course of interstate travel or transportation would have been deemed an impermissible burden on commerce, at least when the measure of the tax reflected this use of the vehicle and entered directly into the rental cost. It might have been necessary to decide whether the tax should properly be characterized as a tax on gross receipts of the lessor, because it is the lessor who must pay the tax to the county in quarterly aggregates, or as a special sales tax formally imposed upon the lessee and only collected and remitted by the lessor. For taxes on interstate transportation or the gross receipts therefrom were repeatedly held to be beyond the authority of the states after the *Case of the State Freight Tax,* 82 US (15 Wall.) 232, 21 L Ed 146 (1873), and *Philadelphia & Southern Steamship Co. v. Pennsylvania,* 122 US 326, 7 S Ct 1118, 30 L Ed 1200 (1887). This included taxes on the receipts from the rental of railroad cars. *Fargo v. Michigan,* 121 US 230, 7 S Ct 857, 30 L Ed 888 (1887). State taxes so measured escaped invalidation only if they could be said to be "on" some intrastate aspect of the enterprise or transaction, or levied in lieu of property taxes. *See* Lockhart, *Gross Receipts Taxes on Interstate Transportation and Communication,* 57 Harv L Rev 40 (1943).

When the Supreme Court in 1938 began a radical reexamination of this area of constitutional law, as of most others, the emphasis shifted from the formal to the economic incidence of the state's tax on interstate commerce, to the possibility that the same tax might be duplicated by another state, and to the use of apportionment formulas to avoid such duplication by allocating to the taxing state an appropriate fraction of the income earned or of the property used in interstate commerce. *Western Live Stock v. Bureau of*

*Revenue,* 303 US 250, 58 S Ct 546, 82 L Ed 823 (1938); *J. P. Adams Mfg. Co. v. Storen,* 304 US 307, 58 S Ct 913, 82 L Ed 1365 (1938); *Gwin, White & Prince, Inc. v. Henneford,* 305 US 434, 59 S Ct 325, 83 L Ed 272 (1939);*Braniff Airways v. Nebraska Bd. of Equalization,* 347 US 590, 74 S Ct 757, 98 L Ed 967 (1954). However, apportionment was not a feasible solution with respect to sales or use taxes levied on individual transactions, which were sustained as a tax on a localized incident not susceptible of duplication, *McGoldrick v. Berwind-White Coal Mining Co.,* 309 US 33, 60 S Ct 388, 84 L Ed 565 (1940), *cf. Henneford v. Silas Mason Co.,* 300 US 577, 57 S Ct 524, 81 LEd 814 (1937), though a sales tax on sales to local buyers completed in another state was not. *McLeod v. Dilworth Co.,* 322 US 327, 64 S Ct 1023, 88 L Ed 1304 (1944). It was essentially on this theory of taxing a local transaction divorced from its intended and actual object that the Supreme Court of Tennessee sustained the application of that state's unapportioned sales tax to the rental of trucks used partly in interstate transportation. *Central Transportation Company v. Atkins,* 202 Tenn 512, 305 SW2d 940 (1957).

Nevertheless, the economic incidence of a tax measured by the price of the individual sale and a tax measured by the gross receipts of many sales is practically identical, and the Supreme Court precedents left a question whether the decisions sustaining unapportioned taxes on sales of goods would extend to taxes measured by receipts from interstate transportation or communication. *See* Lockhart, *supra,* at 70. Certainly decisions such as those holding stevedoring immune from state business taxes, *Puget Sound Stevedoring Co. v. State Tax Comm'n,* 302 US 90, 58 S Ct 72, 82 L Ed 68 (1937); *Joseph v. Carter & Weekes Stevedoring Co.,* 330 US 422, 67 S Ct 815, 91 L Ed 993 (1947), continued to point the other way. On the other hand, *Central Greyhound Lines, Inc. v. Mealey,* 334 US 653, 68 S Ct 1260, 92 L Ed 1633 (1948), held that although New York could not tax the whole receipts

from bus transportation that began and ended in New York but used routes in other states, it could tax a properly apportioned part of those receipts. Thus, if the present plaintiff's rental vehicles were used in the course of interstate transportation either like stevedoring equipment and services at the beginning or end of a voyage or like a seat rented from a bus company, these decisions would at least raise doubt whether the county and the taxpayer must make some attempt to segregate a protected interstate portion of its vehicle rentals from the taxable portion, unless the price collected for each rental could be called a local sale as defendants contend.

So far as plaintiff relies simply on the substantial use of its vehicles by interstate airline passengers, it might be said that in traditional terms their interstate travel has ended and that the passenger renting a car has made a new choice of intrastate transportation. There are other means of going from or to the Portland airport which could equally claim tax immunity on such an errand if plaintiff's customers can. However, Supreme Court doctrine on the subject has not stood still.

In 1977, the Court sustained a tax levied by Mississippi on a motor carrier employed in picking up General Motor automobiles shipped to Jackson, Mississippi, by rail and delivering them to dealers in Mississippi. *Complete Auto Transit, Inc. v. Brady,* 430 US 274, 97 S Ct 1076, 51 L Ed 2d 326 (1977). It will be noted that the taxpayer's role in interstate transportation was analogous to that claimed for the automobiles rented at the Portland airport in this case. Mississippi's tax was confusingly labeled as a "privilege [tax] for the privilege of engaging or continuing in business or doing business within this state," to be measured by "gross proceeds of sales or gross income," at a rate of five percent in the case of transportation services, although the taxpayer was also required to add the tax to the sales price and collect it along with that price. The Supreme Court referred to the tax first as a

"privilege tax" and then as a "sales tax". 430 US at 274-275. The bulk of Justice Blackmun's opinion for the Court was devoted to overruling the doctrine of *Spector Motor Service v. O'Connor,* 340 US 602, 71 S Ct 508, 95 L Ed 573 (1951) that a "privilege tax" on doing interstate commerce is void because the privilege is not one a state can grant or deny. That does not concern us, since Multnomah County did not feel the antique need to find some object like a "privilege" for its tax. More relevant is that *Complete Auto Transit, Inc.* went somewhat out of its way also to discredit the formal prohibition against "direct" taxes on interstate commerce pronounced in *Freeman v. Hewit,* 329 US 249, 67 S Ct 274, 91 L Ed 265 (1946) and earlier cases, in favor of the test of actual economic effects advocated by Chief Justice Stone and Justice Rutledge in the 1940's. 430 US at 279-282.[5] In discussing the substance of that test the opinion included the element of a fair apportionment. But it did not discuss it further in relation to the case before it, perhaps because all of Complete Auto Transit's services to interstate commerce were performed within Mississippi.

A year later, the Court held that *Complete Auto Transit, Inc.,* also "required" overruling the decisions that had immunized stevedoring from state business taxes. *Washington Rev. Dept. v. Stevedoring Assn.,* 435 US 734, 98 S Ct 1388, 55 L Ed 2d 682 (1978). The opinion, again by Justice Blackmun, once more emphatically rejected the premise that a business activity is immune from state taxation because it is an integral part of interstate transportation. Both Complete Auto Transit and the Washington stevedoring companies were assumed to be engaged in interstate commerce. The latter's argument that the commerce clause cases

---

[5] In a footnote the opinion also invites us to compare *Fargo v. Michigan,* which we have mentioned above, with *State Tax on Railway Gross Receipts,* 82 US (15 Wall.) 284, 21 L Ed 164 (1873), presumably to the latter's advantage and apparently resurrecting it from its ancient overruling in *Philadelphia & So. S. Co. v. Pennsylvania, supra.* 430 US at 279, n. 9.

had shown a greater solicitude for protecting interstate movement than "nonmovement" objects of taxation also was rejected by citation of *Complete Auto Transit, Inc.* Instead of categorical distinctions between types of businesses, types of taxes and tax bases, and exact relations to the course of interstate or foreign commerce, the following repeated phrases appear to constitute the Court's present formula for the validity of state taxes under the commerce clause: "It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business." *Western Live Stock v. Bureau of Revenue,* 303 US 250, 254, quoted in *Colonial Pipeline Co. v. Traigle,* 421 US 100 at 108, 95 S Ct 1538, 44 L Ed 2d 1 (1975), *Complete Auto Transit, Inc., supra,* at 288 and *Washington Rev. Dept., supra,* at 745. Decisions following *Western Live Stock* "have considered not the formal language of the tax statute but rather its practical effect, and have sustained a tax against Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc., supra* at 279. The state's financial needs are somehow to be "balanced" against the burden they impose on interstate commerce, and the "Commerce Clause balance tips against the tax only when it unfairly burdens commerce by exacting more than a just share from the interstate activity." *Washington Rev. Dept., supra,* at 748.

We may respectfully assume that the "fairness" of the burden and the "just share" exacted from the taxpayer describe the ultimate judgment of the "balance" rather than instructions for scrutinizing a tax under the commerce clause. Insofar as constitutional rules are in the first instance directives to state and local lawmakers, a rule to be "fair" or "just" makes a limited contribution to difficult and controversial

[104]

debates over tax sources and rates. Four other phrases were recited once again in *Washington Rev. Dept:*

> "The Court repeatedly has sustained taxes that are applied to activity with substantial nexus with the State, that are fairly apportioned, that do not discriminate against interstate commerce, and that are fairly related to the services provided by the State (citing cases)." 435 US at 750.

The Court then proceeded to hold that the Washington stevedores had "proved no facts" contradicting their obvious nexus with the state in which they functioned, nor requiring apportionment of the tax, which was "levied solely on the value of the loading and unloading that occurred in Washington." Although Washington's tax rates differed by type of business, the one percent rate applied to them along with other service businesses was not shown to discriminate against interstate commerce. And "[f]inally, nothing in the record suggests that the tax is not fairly related to services and protection provided by the State." 435 US at 750-751.

Of these four criteria, only two are apt to pose questions of genuine cutting force in cases like the present: "Apportionment" and "discrimination."[6]

---

[6] The problem of "nexus" arises when a state attempts to tax a nonresident taxpayer who has no or little physical presence in the state, primarily in the state's efforts to reach part of a nonresident's income from cross-border business transactions with persons in the state, *see Northwestern Cement Co. v. Minnesota,* 358 US 450, 79 S Ct 357, 3 L Ed 2d 421 (1959); *American Refrigerator Co. v. State Tax Commission,* 238 Or 340, 346, 395 P2d 127 (1964), or to compel such a taxpayer to collect and remit use taxes to its buyers' states, *see, e.g., National Bellas Hess, Inc. v. Dept. of Revenue,* 386 US 753, 87 S Ct 1389, 18 L Ed 2d 505 (1967).

It is not clear whether or how the "fair relation to state services" can serve as a test independent from nexus. There are occasional perfunctory references to police and fire protection, *see, e.g. Washington Rev. Dept., supra,* at 704 (Powell, J., concurring). But surely no such mechanical *quid pro quo* to the taxpayer itself is required, for instance in the case of taxes levied for specific functions; we doubt that the Court means to immunize a nonresident investor in unimproved real estate from a school tax. In practical economic terms, when a state provides the organized legal system and other social machinery for conducting purchases, sales, or other economic activities in its market, it surely protects and serves whatever

Multnomah County's tax on vehicle rentals concededly is not apportioned. The county attempts to meet plaintiff's attack on this ground by arguing that the tax is simply based on the rental fee, however that is computed, and the decision to make the mileage traveled a part of the rental formula is not its choice but that of the parties to the transaction. We doubt that this argument suffices, if this tax otherwise is subject to the requirement of apportionment. It is true that a part of the rental may represent a flat daily fee, whether or not the car is driven even one mile, but if a portion of the total rental is collected for mileage driven in interstate travel, the county or state cannot overlook that fact. The question is whether the tax is one requiring apportionment at all.

As stated earlier, in the era when the Supreme Court developed apportionment as a way to allocate the taxable income and movable or intangible assets of multistate enterprises among several taxing states, it also sustained sales and use taxes without an effort to apportion these taxes.[7] The county's second line of defense is that this is such a tax. The practical fact is that taxes on individual transactions cannot be collected from the purchasing party if the proper apportionment must be determined with respect to each

---

interest of the taxpayer suffices to constitute his required "nexus" for tax purposes. Perhaps the Court means to reserve the "fair relation" test as a potential tool for extending judicial review to the magnitude of a tax. In any event, there is no doubt about this element with respect to plaintiff's rental vehicles.

[7] A sales tax is normally collected from the seller, and the Court has allowed the state of the buyer to protect its sellers by levying a compensating use tax on goods brought into the state. *Henneford v. Silas Mason Co.,* 300 US 577, 57 S Ct 524, 81 L Ed 814 (1937). However, in *McGoldrick v. Berwind-White Coal Co., supra,* the state of the buyer was allowed to levy its sales tax on the entire price of an interstate sale without meeting the contention that the seller's state could duplicate the tax. Later Mr. Justice Rutledge, dissenting in *McLeod v. J. E. Dilworth Co., supra,* and concurring in two companion cases, proposed that the power to tax such a transaction be allowed only to the state of the market rather than the state of origin, and he repeated this view in a concurring opinion in *Freeman v. Hewitt, supra,*cited by the Court in *Complete Auto Transit, Inc.,* 430 US at 280-281.

transaction. In the present case, for instance, this might require that automobile rental businesses like plaintiff ask each customer to report any distance that the vehicle was driven outside Oregon, and that they keep records from which the county could check on the accuracy of such reports.

■ However, if the purpose of apportionment is not to segregate "intrastate" from "interstate" commerce in order to immunize the latter but only to avoid taxation of the same commercial transaction by more than one state, plaintiff must show that such multiple taxation is either an actuality or a substantial likelihood. *Cf. Central Railroad Co. v. Pennsylvania,* 370 US 607, 82 S Ct 1297, 8 L Ed 2d 720 (1962) (requiring proof of tax situs of moving cars for apportionment of property taxes). Plaintiff does not tell us that any part of its vehicle rentals in Multnomah County are subject to taxation in another state, and it seems unlikely.[8] We conclude that the tax is not invalid for lack of an apportionment formula.

Among the four quoted criteria, the oldest and most durable is that a state tax may not discriminate against interstate or foreign commerce. To hold that a tax is "discriminatory" against such commerce has long been more certainly fatal than that the tax is doubtfully "fair" or "just" toward it, for the latter adjectives involve questions of degree. The problem is to distinguish when a tax "discriminates" against interstate commerce and when it is merely designed to assure that "even interstate business must pay its way," as approved in *Western Live Stock,* 303 US at 254 and the succeeding cases cited in *Complete Auto Transit, Inc., supra.*

■ If interstate commerce is to bear its "just share of the state's tax burden," a tax is not unconstitutional

---

[8] Theoretically, this could perhaps happen when a car rented in Portland is returned to plaintiff in another state or vice versa. Section 3D of Ordinance No. 122 lays responsibility for paying the tax upon the commercial establishment which provided the vehicle in the county, regardless whether the rental fee is collected there.

merely because it is designed to reach persons in the course of such commerce who do not otherwise share in that tax burden. If that is a legitimate purpose, it does not become illegitimate because it is candidly expressed. A tax designed to obtain some revenue from transient visitors or activities in interstate or foreign commerce might for that reason alone have been vulnerable under the line of Supreme Court precedents, now disapproved in *Complete Auto Transit, Inc.* and *Washington Rev. Dept.,* which gave such commerce a degree of "free trade" immunity from state taxes, *see* 430 US at 278-279; but it is not necessarily discriminatory.

■   True, we are reminded that such a "tailored tax" requires careful scrutiny for discrimination or other "forbidden effect" on interstate commerce. 430 US at 288, n. 15. But "discrimination" implies a comparison, an objection not to some burdensome imposition as such but to differential treatment where the differentiation is constitutionally forbidden. Here the county stresses that the vehicle rental tax makes no such differentiation; it applies to all short term rentals anywhere in the county, not only at the airport, and to residents and visitors alike.[9] That might not be conclusive if the equality of treatment were merely formal and the actual incidence of the tax on local users were only episodic and trivial, but this is not the case. We think that the proportion of its incidence on residents of Multnomah County is sufficiently large to assure a local political constituency against its abuse, meeting this concern of the Supreme Court's commerce clause

---

[9] Even assuming that the vehicle rentals at the airport are otherwise an extension of interstate travel, this characteristic of the tax distinguishes it from the local tax on airline passengers in *Evansville-Vanderburgh Airport Auth. v. Delta Air Lines, Inc.,* 405 US 707, 92 S Ct 1349, 31 L Ed 2d 620 (1972), which was sustained only as a "user charge" dedicated to airport construction and maintenance. Plaintiffs in the present case are also assessed a ten percent fee by the Port of Portland for concession space at Portland International Airport.

doctrines.[10] *See, e.g., South Carolina Highway Dept. v. Barnwell Brothers, Inc.,* 303 US 177, 184-185 fn 2, 58 S Ct 510, 82 L Ed 734 (1938). We conclude that although the vehicle rental tax may be described as a "tailored tax," it does not discriminate against interstate commerce.

Accordingly, the circuit court correctly declared that plaintiff had not established a reason to invalidate Ordinance No. 122.[11]

Court of Appeals' dismissal vacated; circuit court judgment affirmed.

---

[10] Plaintiff's general manager for Portland testified that, in the three months following enactment of the ordinance, 4.3 percent of its Multnomah County contracts were made with customers having Portland addresses. U-Haul presented evidence that its Multnomah County office derived 25 percent of its revenues during the period July 1976 through February 1978 from rentals of trucks for use within the county.

[11] Plaintiff did not seriously pursue its perfunctory invocation of other clauses of the state and federal constitutions which include unexplained citations to the federal first, fourth, and fifth amendments. A point perhaps worth mentioning is that its claim of denial of equal protection between out-of-state travelers and county residents amounts to the claim of discrimination against interstate commerce in another guise, although of course residents may equally with nonresidents have a claim under the commerce clause. Also, as stated above, Ordinance No. 122 does not distinguish between citizens of Oregon and of other states so as to implicate US Const art IV, § 2.

## APPENDIX*

"Ordinance No. 122

"An Ordinance Imposing a Tax upon Motor Vehicle Rentals; Fixing Rates; Providing for Administration, Collection and Other Related Matters; Requiring Licenses; and Imposing Penalties.

"Multnomah County ordains as follows:

"Section 1. *Definitions.*

. . . .

---

*This text is taken from Exhibit 4. The sections are renumbered in the codified Multnomah County ordinances.

"C. 'Commercial establishment' means any person or other entity, any part of whose business consists of providing the use of motor vehicles for a rental fee.

. . . .

"E. 'Rental fee' means the gross fee, whatever the basis of its calculation, paid to a commercial establishment by any person for the rental of a motor vehicle.

"Section 2. *Imposition of Tax.*

"A. A tax is hereby imposed on every person renting a motor vehicle from a commercial establishment in Multnomah County if the rental is for a period of thirty (30) days or less. A rental shall be considered as having a duration of thirty (30) days or less if the actual possession or use by the person renting the vehicle terminates not later than the end of a thirty (30) day period or if any contract governing the rental has a duration of thirty (30) days or less.

"B. The rate of the tax imposed by subsection A of this section shall be equal to ten percent (10%) of the gross rental fee charged by the commercial establishment for the rental.

. . . .

"Section 3. *Collection of Tax.*

"A. The tax imposed by section 2 of this ordinance shall be collected by the commercial establishment at the time it collects a rental fee.

"B. On or before the 30th day of January, April, July and October of each year, each commercial establishment shall remit to the Director all taxes collected during the preceding calendar quarter. The remittance shall be accompanied by a report showing (1) the amount of the gross rental fees collected by the commercial establishment during the preceding quarter; (2) the amount, if any, of said rental fees which is attributable to and identified on the records or billings of the commercial establishment as being for gasoline sales; and (3) such further information as the Director may prescribe.

"C. All commercial establishments shall maintain accurate records of rental fees assessed and of taxes collected, and such records shall be subject to

[110]

review, inspection and audit by the Director or his designee at all reasonable times.

"D. In the case of motor vehicle rentals which originate in Multnomah County but for which the rental fee is collected at some other location, the commercial establishment which provided the vehicle in the county shall be responsible for remittance of the tax prescribed herein, based on the total rental fee, wherever collected.

"E. The amount of tax required to be collected under section 2 of this ordinance shall be a debt owed by the commercial establishment to the county until remitted under this section.

"Section 4. *Use of Tax by County.*

"The taxes collected under this ordinance shall be general fund revenue of the county, except that the portion of taxes attributable to gasoline sales shall be subject to the limitations on use prescribed by the Constitution and laws of Oregon.

. . . .

"Section 8. *Penalties.*

"A. In addition to any other penalties prescribed by law, any commercial establishment which fails to collect and remit all taxes collected by it or otherwise to comply with this ordinance shall be subject to a penalty equal to fifty percent (50%) of any deficiency in the taxes remitted by it, or to such lesser penalty as the Director may assess.

"B. The penalty imposed by subsection A of this section shall be a debt owed by the commercial establishment to the county.

"C. Any person who wilfully violates any provision of this ordinance shall, upon conviction, be subject to a fine of not more than $500, imprisonment in the county jail for not more than six months, or both such fine and imprisonment."