*414
 
 BREWER, J.
 

 Defendants appeal from a declaratory judgment and injunction that, among other provisions, prohibits their use of a private road (the roadway) that abuts three parcels of property owned by plaintiffs Seay, Vance, and Wells. Defendants challenge the trial court’s rejection of their defenses that plaintiffs’ complaint failed to state a claim and that plaintiffs lacked standing to seek relief. They also assert that Seay and Vance failed to prove a necessary element of their claims, namely that defendants substantially interfered with their easement rights in the roadway. Further, defendants challenge the trial court’s determination that the roadway is located, in part, on the parcel owned by plaintiffs Wells; defendants contend that the court lacked authority to make that determination without joining as a party another property owner, Fahrer, who, defendants assert, owns the portion of the roadway abutting the Wells parcel. As a consequence, defendants assert that the trial court erred in declaring that they have no right to use the roadway and in enjoining them from using it. On
 
 de novo
 
 review, ORS 19.415(3), we reverse in part, vacate and remand in part, and otherwise affirm.
 

 The parties each own parcels of land on Sauvie Island that adjoin the roadway. The roadway, in turn, connects to Gillihan Road, a public road. All of the parcels formerly were owned by a common grantor, Minoggie. Minoggie subdivided his property and periodically, between 1961 and 1986, deeded parcels to the predecessors of the current owners. The map set out below shows the locations of the various parcels, the roadway, and other relevant features.
 

 [[Image here]]
 

 
 *415
 
 Minoggie conveyed an appurtenant roadway easement to the grantee when he sold the first parcel, now owned by Seay, in 1961. The deed from Minoggie to Seay’s predecessor described the location of the easement by metes and bounds, beginning from a reference point at the western corner of what is now defendants’ property. The deed description then precisely denoted the point on Gillihan Road, 1084.68 feet to the northeast, where the centerline of the 30-foot wide
 
 [1]
 
 easement begins (point A on the map). From there, the roadway description continued as follows:
 

 “[Tjhence south 62° 35' 30" east 405.8 feet [point B]; thence south 64° 10' 30" east 300.2 feet [point D]; thence south 10° 31' west 166.75 feet, more or less, to the northerly line of the herein described premises at a point 15 feet easterly of the northwesterly corner thereof; EXCEPTING the part of said easement that lies in Gillihan Road.”
 

 The deed also reserved an easement over the entire length of the western 30 feet of the Seay parcel to Minoggie, effectively extending the roadway to the northern boundary of what became the Vance parcel. Later in 1961, Minoggie granted an identical appurtenant easement to Vance’s predecessor when he sold the Vance parcel. Minoggie granted an identical easement to Staleys predecessor when he sold the Staley parcel in 1970.
 
 [2]
 

 Minoggie also sold the Wells parcel in 1961. The deed description for that parcel began at the same beginning reference point used in the deed to Seay’s predecessor, that is, the western corner of defendants’ parcel. It established a point 915.45 feet northeast on Gillihan Road as the western corner of the Wells parcel. The northern corner of the parcel lies 169.20 feet further up Gillihan Road, at the same point where the roadway begins (point A on the map). The deed description continued:
 

 “[Tjhence South 62° 35' 30" East 405.80 feet [point Bj; thence South 64° 10' 30" East 9.30 feet [point Cj; thence South 19° 20' 30" West 158.0 feet to an iron pipe; thence North 61° 44' 30" West 517.14 feet to the center of Gillihan
 
 *416
 
 Road and the true place of beginning; EXCEPTING the portion lying within Gillihan Road; and FURTHER EXCEPTING the Northerly 15 feet of the herein said tract as the South one-half of a 30 foot easement heretofore established for ingress and egress and utility purposes over said strip and filed for record in Book 2073 page 166, Deed records.”
 

 In 1962, Minoggie sold the parcel now owned by defendants. A 15-foot strip of land along the northern 60.32 feet of the easternmost boundary of defendants’ parcel underlies, and is subject to, the roadway easement. However, the deed did not grant an easement over the rest of the roadway.
 

 In 1986, Minoggie sold the parcel now owned by Fahrer, which lies to the north of the Wells and Staley parcels. Unlike the earlier conveyances made by Minoggie, the legal description to the Fahrer parcel did not begin at the western corner of defendants’ property. It began instead at a different reference point, led to the northeastern corner of the Fahrer parcel and then followed the northern boundary of that parcel. The deed described the western boundary as running along Gillihan Road
 

 “to a point on the North line of the [Wells property]; thence on the North line of said [Wells] property, South 62° 30' 30" East, 378.65 feet to an angle point [point B]; thence on the North line of said property, South 64° 19' 10" East, 300.23 feet to an angle point in said property line [point D]; thence South 77° 15' 15" East, 384.36 feet to the low water line of the Willamette River; thence downstream following the said low water line * * * to the true point of beginning, containing 7.3 acres, more or less.”
 

 The deed then stated:
 

 “The southerly 15 feet of the herein said tract is the South
 
 V2
 
 of a 30 foot easement heretofore established for ingress and egress and utility purposes over said strip and filed for record in Deed Book 2073, Page 166,1961.”
 

 To summarize, Minoggie conveyed nonexclusive appurtenant easements over the entire roadway to the predecessors of Vance, Seay, and Staley. Defendants, Fahrer, and the Wellses do not hold such an easement.
 
 [3]
 

 
 *417
 
 Nevertheless, after acquiring their property, defendants used portions of the roadway crossing the Wells, Fahrer, Staley, and Seay parcels to gain access to Gillihan Road from a barn on the eastern portion of their parcel. Defendants also placed a mobile home near the barn and rented it to a farm hand who used those portions of the roadway to reach Gillihan Road. In 2000, defendants constructed a driveway onto their property from the roadway. They initially intended to begin the driveway from the part of the roadway on Seay’s property. However, Seay objected, and defendants then started the driveway further to the north, from the portion of the roadway located on their own property. Traffic on the roadway increased after defendants built the driveway.
 

 Plaintiffs brought this action seeking a judicial declaration that defendants were not entitled to use the roadway and an injunction against such use. In their-answer to plaintiffs’ complaint, defendants asserted that plaintiffs had failed to state facts sufficient to constitute a claim and that plaintiffs lacked standing to bring the action. Those defenses were based on the premise that none of the plaintiffs owned fee title to any of the property underlying the roadway and, in particular, that Fahrer owned the entire length of the roadway abutting the Wells parcel.
 

 After the action was commenced, but before trial, Fahrer granted to defendants “a non-exclusive easement across the portion of the easement property located on [Fahrer’s] property as depicted on the map attached as Exhibit D * * That map was consistent with defendants’ assertion that Fahrer owns the entire roadway from Gillihan Road to the boundary between the Wells and Staley parcels.
 
 [4]
 

 
 *418
 
 At trial, a professional surveyor testified on plaintiffs’ behalf that the northern boundary of the Wells parcel extends to the centerline of the roadway. In response, defendants offered in evidence the deeds from Minoggie to the Wellses’ and Fahrer’s predecessors to show that the northern boundary of the Wells parcel lies at the southern boundary of the roadway, not at its centerline. Defendants relied on the provision in the deed to the Wellses’ predecessor, “EXCEPTING the Northerly 15 feet of the herein said tract as the South one-half of a 30 foot easement,” to show that Minoggie did not intend to convey the northern 15 feet of the tract to the grantees. Defendants also relied on the provision in the deed from Minoggie to Fahrer’s predecessor stating that “[t]he southerly 15 feet of the herein said tract is the South V2 of a 30 foot easement * *
 

 In its findings of fact, the trial court addressed the Fahrer deed:
 

 “The description appears to be in error in that the southerly 15 feet of the said tract has to be the
 
 North V2
 
 of the 30 foot easement. Defendants contend that the metes and bounds description of the Fahrer property would support their conclusion that the Wells do not own the North 15 feet of their property which is the Southerly
 
 V2
 
 of the roadway easement but have not supplied any evidence in support of their contention. Thé evidence presented in this case is to the contrary. Plaintiffs Wells do own the southerly
 
 V2
 
 of the 30 foot roadway easement abounding their real property.”
 

 (Emphasis in original.) The court concluded that plaintiffs had standing, that they had properly stated claims for relief, and that they had proved those claims. The court entered a judgment declaring that defendants have no right to use the roadway and enjoining them from using it.
 
 [5]
 

 On appeal, defendants renew their arguments that plaintiffs lack standing to assert claims for declaratory and injunctive relief and that they failed to state claims for such relief because they do not own any of the disputed portions of
 
 *419
 
 the roadway. Further, defendants argue that Seay and Vance failed to prove a necessary element of their claims, namely, that defendants substantially interfered with their easement rights. Finally, defendants urge that the trial court, in effect, improperly reformed the deeds from Minoggie to the Wellses’ and Fahrer’s predecessors by concluding, in Fahrer’s absence as a party, that the centerline of the roadway marks the boundary between those parcels. Because plaintiffs assert distinct interests in various portions of the roadway, we analyze those interests separately in considering defendants’ arguments on appeal. We begin with the interests of Seay and Vance.
 

 
 *399
 
 “(2) If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct * * * the court may impose a sentence concurrent with or consecutive to the other sentence or sentences.
 

 
 *419
 
 We first consider defendants’ argument that Seay and Vance lacked standing to assert their claims. Defendants argue that an easement holder “has no possessory right and therefore no standing to complain of mere usage.” Defendants are mistaken. An easement holder is entitled to appropriate relief from a person who has substantially interfered with his or her easement rights.
 
 Landauer v. Steelman,
 
 275 Or 135, 141, 549 P2d 1256
 
 (1976); Marsh v. Pullen,
 
 50 Or App 405, 409, 623 P2d 1078,
 
 rev den,
 
 290 Or 853 (1981). In
 
 Eckles v. State of Oregon,
 
 306 Or 380, 383-84, 760 P2d 846 (1988),
 
 cert dismissed,
 
 490 US 1032 (1989), the Supreme Court stated:
 

 “Ordinarily, ‘standing’ means the right to obtain an adjudication. It is thus logically considered prior to consideration of the merits of a claim. To say that a plaintiff has ‘no standing’ is to say that the plaintiff has no right to have a tribunal decide a claim under the law defining the requested relief, regardless whether another plaintiff has any such right. When this court has used the term ‘standing,’ the term has for the most part been used in this sense. * * *
 

 “In contrast, ‘standing’ is also sometimes used to refer to the existence of a substantive personal right. Used in this sense, ‘standing’ is concerned with the merits of a claim. To say that a plaintiff has ‘no standing’ is to say that no right of the plaintiff was violated, regardless whether the conduct of a defendant was in general unlawful or unlawful as to some other person. This use of‘standing’ should be avoided because it easily confuses the right to obtain an adjudication of a claim for relief with the right to obtain the relief itself.”
 

 
 *420
 
 (Citations omitted.) Because Seay and Vance had the right to obtain an adjudication on the merits of their claims, the trial court properly rejected defendants’ standing defense.
 

 Defendants’ affirmative defense that Seay and Vance failed to state claims for declaratory and injunctive relief focuses on whether they adequately
 
 alleged
 
 a cognizable injury to their easement rights. Plaintiffs initially assert that defendants failed to preserve that defense before the trial court. We disagree. In their answer, defendants alleged, as an affirmative defense, that plaintiffs had failed to state facts sufficient to constitute a claim for relief. However, even if defendants had failed to assert the defense in a pleading, they could have raised it for the first time at trial. ORCP 21 G(3). Defendants’ counsel elaborated on the defense in closing argument. He asserted, “[N] umber one, they haven’t pleaded interference. Number two, I think the testimony was clear ftbm the plaintiffs that there isn’t any interference * * Although that argument was brief and came late in the trial, it ensured both that plaintiffs had an opportunity to present opposing arguments and that the trial court had an opportunity to address and correct any alleged error.
 
 J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.,
 
 132 Or App 565, 568, 889 P2d 383,
 
 rev den,
 
 321 Or 47 (1995). Therefore, the defense was adequately preserved. We turn to its merits.
 

 In their claim for declaratory relief, Seay and Vance alleged that, “by defendants’ continued use of the easement, plaintiffs will suffer injury in the personal enjoyment of their property rights.” The allegation asserted an injury to a recognized interest and, thus, met that pleading requirement for a declaratory relief claim.
 
 See Budget Rent-A-Car v. Multnomah Co.,
 
 287 Or 93, 95, 597 P2d 1232 (1979) (claimant seeking declaratory relief must assert “some injury or other impact on a legally recognized interest beyond an abstract interest in the correct application or the validity of [the legal rights in question]”).
 

 In their claim for injunctive relief, Seay and Vance alleged only that “[defendants’ continued use of the easement violates a substantial enforceable right of plaintiffs.” That allegation arguably was insufficient to state a claim for injunctive relief because it did not allege an
 
 irreparable
 
 
 *421
 
 injury.
 
 See Gildow v. Smith,
 
 153 Or App 648, 653, 957 P2d 199 (1998) (holding that injunctive relief is an extraordinary remedy, to be granted only where the claimant has suffered irreparable injury). However, we need not make that determination. As we now explain, even if Seay and Vance adequately stated a claim for injunctive relief, they were not entitled to declaratory or injunctive relief because they failed to prove that defendants substantially interfered with their easement rights.
 

 It is undisputed that Seay would be entitled to redress for defendants’ use, without a legal right, of the portion of the roadway that crossed Seay’s property. However, the situation is different with respect to the portions of the roadway over which Seay and Vance hold only easement rights. The existence of those interests did not, standing alone, entitle them to the relief sought. The gravamen of their claims for declaratory and injunctive relief is that defendants violated, that is, interfered with, their easement rights. As noted, an action for interference with easement rights requires a showing of a “substantial” or “unreasonable” interference with the grantee’s right to enjoy the easement.
 
 Landauer,
 
 275 Or at 141;
 
 Marsh,
 
 50 Or App at 409.
 

 Plaintiffs note that Oregon appellate decisions to date have involved only interference disputes between easement holders and servient estate owners or users with other legal interests, not users like defendants who have no legal interest in the servient estate.
 
 See, e.g., Craft v. Weakland,
 
 174 Or App 185, 23 P3d 413 (2001) (dominant estate holder sued servient estate holder for interference with former’s easement right);
 
 Watson v. Banducci,
 
 158 Or App 223, 973 P2d 395 (1999) (same). That observation misses the point. Whether or not defendants have an interest in any part of the servient estate, Seay and Vance were required, in order to obtain relief, to demonstrate substantial interference with their
 
 own
 
 interests. Those interests are limited. The deeds from Minoggie to Seay’s and Vance’s predecessors described the easements as being “for ingress and egress and utility purposes * * It is undisputed that the rights conferred are nonexclusive and confined to the specified uses.
 

 
 *422
 
 “[A], showing of a substantial interference * * * requires some showing that the grantee’s use was actually damaged by the alleged interference.”
 
 Watson,
 
 158 Or App at 236. The evidence at trial showed that Seay and Vance occasionally were required to pull their vehicles to the side of the roadway to allow defendants to pass. In that regard, defendants certainly caused a momentary inconvenience. However, that evidence stands in sharp contrast to circumstances where courts have found interference to be substantial. For example, defendants did not block passage on the roadway by parking vehicles on it.
 
 Cf. Marsh,
 
 50 Or App at 409 (holding that interference was substantial where “on several occasions plaintiffs or their guests had to maneuver around parked cars to travel down the [easement] or had to request that certain cars be moved to permit passage along the road”). Nor did defendants block the roadway with a gate or other obstruction.
 
 Cf. Watson,
 
 158 Or App at 237 (concluding that the defendant’s refusal to give the plaintiffs real estate agent a key to a locked gate that blocked a driveway easement constituted substantial interference). Likewise, defendants made no attempt to restrict the access of plaintiffs’ invitees to the roadway.
 
 Cf. Landauer,
 
 275 Or at 139-40 (concluding that the defendant substantially interfered with easement where the defendant had denied several of the plaintiffs invitees use of a driveway easement, one of whom was attempting to deliver heating oil to the plaintiffs house). In short, plaintiffs did not prove that defendants substantially interfered with Seay’s or Vance’s use of the roadway.
 

 Because Seay and Vance failed to prove that defendants substantially interfered with their easement rights, they were not entitled to either injunctive or declaratory relief with respect to their interests as easement holders. Accordingly, the trial court erred in entering judgment for Seay and Vance except with respect to the portion of the roadway to which Seay holds fee simple title.
 
 [6]
 

 
 *423
 
 We turn to the Wellses’ claims. Their circumstances are factually distinct in that they claim fee simple ownership, not easement rights, in the portion of the roadway that abuts their parcel. If, as defendants assert, the Wellses do not own any portion of the roadway, they have no legally recognized interest in it and, thus, would lack standing to seek declaratory or injunctive relief.
 
 See Powell v. Bunn,
 
 185 Or App 334, 346, 59 P3d 559 (2002) (“If the court’s decision will not have a practical effect on the plaintiff because the plaintiff cannot demonstrate an injury or other impact on a legally recognized interest, the case will be dismissed based on the plaintiffs lack of standing.”). In rejecting defendants’ standing defense, the trial court necessarily determined that the Wellses owned the portion of the roadway abutting their parcel. From that premise, defendants argue that “what the judge gave to [the Wellses], he necessarily took from Fahrer.” In defendants’ view, Fahrer is a necessary party to this action, and, because he was not joined, the trial court lacked authority to enter a judgment in favor of the Wellses.
 
 See Wright v. Hazen Investments, Inc.,
 
 293 Or 259, 264, 648 P2d 360 (1982) (“[S]ince plaintiff failed to join [a necessary party], it would appear that the trial court was thereby deprived of jurisdiction to issue a declaratory judgment in this case.”).
 

 Because defendants failed to raise that issue at trial, we initially consider whether it is properly before us.
 
 See Gildroy v. Board of Tax Service Examiners,
 
 184 Or App 227, 231, 56 P3d 441 (2002) (“Even when lack of preservation has not been asserted by the opposing party, we have an obligation to satisfy ourselves that an argument in fact has been preserved.” (citations and internal quotation marks omitted)). ORS 28.110 provides, “When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.” In the declaratory judgment context, failure to join a necessary party is a jurisdictional matter.
 
 Wright,
 
 293 Or at 264. We may consider the issue even if the
 
 *424
 
 parties failed to preserve it at trial or raise it on appeal.
 
 Oregon State Shooting Assn. v. Multnomah County,
 
 122 Or App 540, 543, 858 P2d 1315 (1993),
 
 rev den,
 
 319 Or 273 (1994). Accordingly, we do so now.
 

 It is true, as plaintiffs assert, that the declaratory judgment expressly declared only
 
 defendants’
 
 rights in the roadway, not Fahrer’s. However, the issue of the Wellses’ and Fahrer’s ownership of the roadway was central to the determination of those rights. In the judgment, the court declared that
 

 ‘Vance, Wells, and Seay have the right to a declaratory judgment declaring that [defendants] have no rights to use the easement for access
 
 (other than the limited right given to [defendants] in the January 22nd, 2001, easement agreement from Michael Fahrer, which does not provide full access to defendants’ parcel).”
 

 (Emphasis added.) Accordingly, to determine the extent of defendants’ rights to use the roadway, the trial court necessarily had to determine the extent of Fahrer’s ownership.
 

 Plaintiffs remonstrate that the declaratory judgment did not prejudice Fahrer because it is not binding on him.
 
 See Fox v. Country Mutual Ins. Co.,
 
 169 Or App 54, 64-65, 7 P3d 677 (2000),
 
 rev den,
 
 332 Or 137 (2001) (“Defendants were not parties to [the declaratory] judgment and, consequently, cannot be bound by its holding, regardless of the fact that they did not ask to be joined or otherwise challenge the propriety of the judgment.”). Although that may be true, the requirement that “no declaration shall prejudice the rights of persons not parties to the proceeding” implements, but does not obviate, the mandate in the first clause of ORS 28.110
 
 requiring
 
 joinder of all “who have or claim any interest which would be affected by the declaration.”
 
 See Eddy v. Eddy,
 
 95 Or App 733, 736, 770 P2d 969,
 
 rev den,
 
 308 Or 158 (1989) (citing
 
 Stanley, Adm. v. Mueller,
 
 211 Or 198, 207, 315 P2d 125 (1957)). The requirement that all interested parties be joined in a declaratory judgment action serves a broader purpose than the protection of an absent party’s interests. It also protects the certainty of the judgment itself. In
 
 Stanley,
 
 the Supreme Court stated that courts may not issue declaratory judgments between parties “ ‘when others, not bound, might
 
 *425
 
 later raise the identical question and deprive the declaration of that final and pacifying function it is calculated to subserve.’ ” 211 Or at 209 (quoting Edwin M. Borchard,
 
 Declaratory Judgments
 
 256-57 (2d ed 1941)). The court explained:
 

 “In our opinion the mandatory ‘shall’ in [ORS 28.110] should be given its ordinary effect by the courts. We think that under this provision the courts have no authority to make a declaration unless all persons ‘who have or claim any interest which would be affected by the declaration’ are parties to the proceeding. Otherwise, there is no ‘justiciable controversy within the meaning of the statute.”
 

 Stanley,
 
 211 Or at 202.
 

 As that principle applies here, the easement that Fahrer conveyed to defendants grants them access across the entirety of the roadway abutting the Wells parcel. That grant is consistent with the easement descriptions contained in the deeds from Minoggie to the Wellses’ and Fahrer’s predecessors, both of which could be construed to suggest that Fahrer owns the entirety of that portion of the roadway. Fahrer could, in a later action, seek a declaration to that effect. If he were to prevail, the judgment in this action enjoining defendants’ use of the roadway would be abrogated. Because, in Fahrer’s absence as a party, the judgment lacks the requisite certainty and finality, his joinder was necessary.
 
 [7]
 

 Failure to join a necessary party in a declaratory judgment action deprives the court of authority to render a judgment that binds that party; it is considered a jurisdictional defect.
 
 Wright,
 
 293 Or at 264. That is the case here. Accordingly, we vacate and remand the judgment in favor of the Wellses with instructions to dismiss their claims unless Fahrer is joined as a party within a time to be set by the trial court.
 
 See Eddy,
 
 95 Or App at 736.
 

 Declaratory judgment and injunctive relief in favor of plaintiffs Seay and Vance reversed except with respect to
 
 *426
 
 portion of roadway to which Seay holds fee simple title; declaratory judgment and injunctive relief in favor of plaintiffs Wells vacated and remanded with instructions to dismiss unless Fahrer is joined as a party within a time to be set by trial court; otherwise affirmed.
 

 [1]
 

 The roadway itself is only approximately 15 feet wide but evidently is centered on the same line.
 

 [2]
 

 Staley is not a party to this action.
 

 [3]
 

 Plaintiffs’ operative pleading, their second amended complaint, alleged that the Wellses hold an easement over the roadway. However, the undisputed evidence
 
 *417
 
 showed that the Wellses did not hold an easement over any portion of the roadway. At trial, the parties and the trial court appeared to be unaware of the mistaken allegation, and, on appeal, none of the parties notes the error. Accordingly, we do not consider it further.
 

 [4]
 

 At trial, Fahrer testified:
 

 “I was contacted by [defendant Richard Ford], and he explained that he was having difficulty with his use of the road, that it was being contested by some of the neighbors. And as I recall, the research that his attorneys had done for him or people that are working for him indicated that the roadway was on my property from Gillihan Road up to a point — I guess it would be the easterly portion of my property. Well, let me go back. He explained that a portion of this
 
 *418
 
 road, the entire roadway, was to be on my — found to be on my property. And so he was asking for an easement to use the road.”
 

 [5]
 

 The court allowed defendants approximately seven months to construct their own access road before the injunction became effective.
 

 [6]
 

 At trial, plaintiffs’ counsel essentially conceded that Seay and Vance were not entitled to injunctive relief with respect to their easement rights. In closing argument, he stated:
 

 “The only question here is whether the pláintiffs are also entitled to an injunction in addition to the declaratory relief that [defendants] do not have a prescriptive easement. They do not have the right to use this roadway. The
 
 *423
 
 injunction is only necessary for those — is only available to those parcels that do, in fact, have the ownership interest in the land. Not Vance. That’s true. Wells and Seay have ownership interests in the land. They- — they’re the ones that are entitled to an injunction.”
 

 [7]
 

 As noted, Fahrer was a witness at trial. Although he did not expressly testify that he owned the entirety of the roadway fronting the Wells parcel, neither did he disclaim such an interest. His appearance as a witness was not an adequate substitute for joinder.
 
 Eddy,
 
 95 Or App at 736.