Petition for rehearing denied April 6, 1926. For opinion on the merits, see 117 Or.; page 220 (243 Pac. 93).

# W. A. BARRETT et al. v. UNION BRIDGE COMPANY.

(245 Pac. 308.)

Eminent Domain—Law Providing for Condemnation by Counties of Property for Public Roads Held Inapplicable to State Highways (§§ 715, 4562, Or. L.; Laws 1917, p. 588).

1. Section 4562, Or. L., which was part of Laws of 1917, page 588, providing for condemnation by counties of property for public roads, *held* inapplicable to state highways, since court cannot give effect to supposed legislative intention unless words to be imported into statute are in substance at least contained in it, in view of Section 715, Or. L.

Eminent Domain—County Held Unauthorized to Pay Land Owner Damages for Cutting Off Access to Street in Building Bridge, Where No Property is Taken (§ 3196, Or. L.).

2.   Under Section 3196, Or. L., county building approach to bridge is not authorized to pay abutting owner damages for cutting off access to street, where no property is taken.

Bridges—State Highway Commission Held to have Power to Build Bridge, Over River Which was Boundary Between Two Counties, and Approach on City Street Which was Part of State Highway (§§ 3196, 4425, 4432, 4435, 4437, 4441, 4451, 4486, 4496, 4718, 4719, Or. L.).

3.   State Highway Commission *held* to have power to build bridge and approach on city street, which was part of state highway spanning river constituting boundary between two counties, in view of Sections 4432, 4435, 4437, 4441, 4451, 4486, 4496, Or. L., since every grant of power carries with it use and necessary means of its exercise, notwithstanding Sections 3196, 4718, 4719, giving county power to build bridge, and Section 4425, defining state highway.

Eminent Domain—There can be No Recovery of Consequential Damages, Where No Part of Property is Taken.

4.   Since there is no constitutional .provision or statute providing for compensation for damage to property by reason of public use of abutting property, common-law rule prohibiting recovery of consequential damages where no part of property is taken will prevail.

Injunction — Taxpayers Could not Enjoin Expenditure of Public Moneys Already Expended.

5.   Taxpayers could restrain illegal expenditure of public moneys before such expenditure, but, not having done so, they could not, as taxpayers, enjoin expenditure of moneys already expended.

Bridges, 9 C. J., p. 422, n. 12, p. 425, n. 45.
Eminent Domain, 20 C. J., p. 649, n. 99, p. 879, n. 77.
Highways, 29 C. J., p. 365, n. 20 New, p. 370, n. 54.
Municipal Corporations, 28 Cyc., p. 834, n. 10.
States, 36 Cyc., p. 869, n. 55.
Statutes, 36 Cyc., p. 1113, n. 91, p. 1173, n. 66.

From Linn: L. H. McMAHAN, Judge.

In Banc.

REHEARING DENIED.

For the petition, *Messrs. Malarkey, Seabrook & Dibble* and *Messrs. Hill & Marks.*

4.   See 10 R. C. L. 164.
5.   See 14 R. C. L. 360.

*Contra, Messrs. Winter & Maguire* and *Mr. J. M. Devers.*

RAND, J.—Plaintiffs have filed a petition for rehearing, in which they assert that the decision rendered in this case is erroneous in the following respects: 1. That it fails to give effect to Section 4562, Or. L., which they claim is a remedial statute that was enacted to avoid the harshness of the rule that in the absence of some constitutional provision or statute, authorizing it, an abutter whose property has been consequentially damaged by a municipal change of the grade of a public street, cannot recover such damage. 2. That under the provisions of Sections 3196, 4718 and 4719, the County Court is the only agency of the state having the power to erect an approach to a bridge upon a public street in an incorporated city. 3. That the building of the bridge was a matter calling for the exercise of judgment and discretion upon the part of the County Court in inviting bids, and in the letting of the work, and not having exercised this discretion in respect to these matters, the contract between the State Highway Commission and defendant, under which the bridge was constructed, was void, and the structure built thereunder was itself unauthorized and illegal, making the use of the street immediately in front of plaintiff's premises an illegal and unauthorized use. 4. That the rule which should have been followed is that announced in *Less* v. *Butte,* 28 Mont. 27 (72 Pac. 140, 98 Am. St. Rep. 545, 61 L. R. A. 601), and *McGavrock* v. *Omaha,* 40 Neb. 64 (58 N. W. 543), and finally, that the effect of our decision is to overrule *Twohy Bros. Co.* v. *Ochoco Irr. Dist.,* 108 Or. 1 (210 Pac. 873, 216 Pac. 189), and *Springfield etc. Co.* v.

*Lane County,* 5 Or. 265, without even citing them. These contentions will be considered in their order.

1. Section 4562 reads as follows:

"Whenever it is necessary that any county of this state shall require or damage any real property, water, watercourses, or any right or interest therein for public uses hereinbefore set forth, the necessity for such acquisition shall be declared in the first instance by a resolution of the county court or board of county commissioners of said county, and if the owner thereof and said county court or board of county commissioners cannot agree upon the price to be paid for the amount of or interest in his said real property, water or watercourses required, and the damages for the taking thereof, said county court or board of county commissioners, may and is hereby authorized to request the district attorney for the county, and he shall, when so requested, commence and prosecute in the circuit court of said county, in the name of the county, any necessary or appropriate suit, action or proceeding for the condemnation of said amount of or interest in said real property, water, or watercourses, so required for said purpose, and for the assessment of damages for the taking thereof."

Chapter 295, Laws of 1917, of which the above section was a part, comprises as codified, Sections 4563–4576, Or. L.   Sections 4561, 4562 and 4563 are the only sections which provide for condemnation by counties of property for county roads, and until the enactment of said chapter, there was no statute under which a county could institute condemnation suits for the purpose of appropriating property for county roads. The enactment of these three statutes, therefore, was obviously to enlarge the powers of the County Courts, and there is nothing in the statute to indicate any legislative intent to change the rule concerning the recovery of consequential damage. A careful

consideration of the title of the act, as well as of the entire act itself, will show that the act refers only to things pertaining to, or in some way related to a county road, and that the act has no application to the establishment of a city street, or to any public street, after it has once been established. The remedy provided by the three sections just referred to is a remedy which can be invoked only on behalf of a county, and by a county only for some purpose connected with a county road. It cannot be invoked by a city for the purpose of condemning property for a street or other public use, nor by a county for the purpose of condemning any part of a public street for road purposes, or otherwise. To hold that these statutes are remedial statutes, and that their application should be extended to cases similar to the situation involved here, would require the reading into the statutes of terms not contained in them.

Section 715, Or. L., directs that the courts in the construction of statutes, are ''simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, nor to omit what has been inserted.'' We ought never to import into a statute words which are not to be found there, unless from a careful consideration of the entire statute it be ascertained that to import such words is necessary to give effect to the obvious and plain intention and meaning of the legislature. Under the directions of the statute last referred to, we are not at liberty to give effect to any supposed intention or meaning in the legislature, unless the words to be imported into the statute are, in substance at least, contained in it.

2. Section 3196 provides:

''Whenever any county of this state shall construct across any stream any bridge which shall be wholly

or in part within the limits of any incorporated city within such county, such county shall have and is hereby granted the power and authority to use as approaches for such bridge such portions as may be necessary of any street or streets of such city leading to such bridge; and the power, dominion and right of control over such portions of said street or streets as shall be so used, and the right to improve and maintain the same, are hereby granted exclusively to such county."

This section confers upon counties, without their being compelled to institute any condemnation suit, or to pay an abutter for any consequential damage, the right to use and occupy as an approach to a bridge which is being constructed by the county over a stream wholly, or in part, within the limits of an incorporated city, such parts of the public streets of the city, the use of which is necessary for that purpose, and when so used by the county vests in the county the exclusive dominion and control over the part used. The specific thing which for the purposes of this statute is taken from the city and vested in the county is the control and dominion over a part of a public street which has already been established and dedicated to the use of the public. It is not privately owned property, nor a part of a street which has not yet been established. Under this statute, nothing is to be taken but a part of the public street itself. The power of the county to use the street for that purpose is expressly granted, and is not dependent upon the condemnation of any property rights whatsoever. The statute itself contains no provision which would permit the county to pay any consequential damage to abutting owners for cutting off their access to the street. Such payment in such case would be unauthorized and illegal. If, however, in the construction of such approach it would

be necessary for the county to take any part of the abutting owner's property, compensation therefor would, of course, have to be made for such taking. Hence, if as contended for by plaintiff the county alone had the power to construct this approach, and failed to comply with any provisions of the statute prescribing the manner and mode of exercising the powers of the County Court, plaintiffs would not be injured thereby, since in neither event could they recover any damages from the county.

3. Plaintiffs' assertion that the decision in *Twohy Bros. Co.* v. *Ochoco Irr. Dist., supra,* and *Springfield etc. Co.* v. *Lane Co., supra,* are applicable to this case, and have been overruled by our former decision in this case, is based upon the contention that Linn County was the only governmental agency having authority to construct this approach upon the streets of Albany, and that Sections 3196, 4718 and 4719 prescribed the only mode in which the power of the county could be exercised, and that since the mode prescribed was not followed, the approach is an unlawful structure and entitles the plaintiffs to have it abated, so far as it cuts off their access to the street from their premises.

Before considering the question of the agency of the county, and of the effect of the three sections referred to, we will discuss the two cases referred to. In the first case, a contract had been entered into by Twohy Bros. Co. with the Ochoco Irrigation District, a municipal corporation, for the construction of a system for the irrigation of the lands of the district, without competitive bidding as required by the statute, and plaintiff was attempting to recover in an accounting suit its claim against the district for the work and services performed, and it was held

that under a statute requiring competitive bids for public contracts, that mode is exclusive, and must be followed or else the contract is void. Upon rehearing it was held that "when the mode of the exercise of the power is prescribed, and the same is a condition precedent to the exercise of the particular power, the mode becomes the measure of power, and any essential deviation therefrom, renders the act void and ineffectual." The contract under which the services had been performed in that case was illegal, since it was entered into in violation of the express commands of the statute, and being an illegal and void contract, nothing, of course, could be recovered under it. The principle controlling that case is stated by Mr. Black in his work on Interpretation of Laws, first edition, page 318, as follows: "Where statutes confer special ministerial authority, the exercise of which may affect rights of property, or incur a municipal liability, it must be strictly observed, and any material departure will vitiate the proceedings."

A like condition existed in the last case cited, which upon the same ground, rendered the contract sought to be enforced illegal and void. Here the contractor is not suing to recover for services performed under a contract which had been entered into in violation of any statute, as in those two cases. The principle, therefore, has no application in this case, as the State Highway Commission had authority to contract for the construction of this bridge and of the approach which was a part of it.

Section 4425, Or. L., provides:

"Where the terms 'road' or 'highway' are used they shall be taken and deemed to include necessary bridges and culverts, and they shall not be taken or deemed to mean or include city streets. 'State high-

way' shall be taken and deemed to mean any road or highway designated as such by the commission or by law.''

Under this statute, a state highway is any road or highway designated as such by the Commission or by law, while all roads or highways not so designated are not state highways. The prohibition of this statute, if it is a prohibition, applies as much to a bridge constructed by the county as to one constructed by the State Highway Commission. The statute, therefore, is not decisive of any question in this case. Counties are authorized to build the approaches of a bridge on a public street by said Section 3196, and over streams forming a boundary between them by said Sections 4718 and 4719, but their authority is limited to the cases provided for in these statutes. They have no such power where the bridge is on a state highway; that power, if it exists at all, is vested exclusively in the State Highway Commission itself, and if it exists, must be found in statutes other than those relied upon by plaintiffs and referred to above. That the State Highway Commission, under statutes not referred to by plaintiff, does have such power, we think is clear.

The powers and duties of the State Highway Commission are in part prescribed by Section 4432, Or. L. Under that section it has ''general supervision over all matters pertaining to construction of state highways; letting of contracts therefor and the selection of materials to be used in the construction of state highways.'' That section also provides that: ''Said commission shall designate, construct or cause to be constructed a system of state highways within the State of Oregon, etc.''

Section 4435 provides: "All contracts executed for the improvement of state highways shall be made in the name of the state of Oregon and (be) executed by the commission."

Section 4437 provides that: "At any time after proceedings have been instituted by the state of Oregon through the 'state highway commission' to acquire title to any land for a state highway, the location and boundaries of which have been adopted, or designated by the state highway commission or by any county court, said state highway commission may enter into the possession of the land and commence the construction, alteration or repair of such highway."

Section 4441 provides among other things, that: "All moneys raised by counties for road purposes, and expended or to be expended upon roads within such counties *other than state highways,* shall be under the exclusive control of the county court of such counties."

Section 4451 provides: "Any county * * may deposit moneys in the state treasury of the state of Oregon for laying out, grading, surfacing or repairing or in performing any other work upon any highway within the state of Oregon under the direction of the 'State Highway Commission,' and any moneys so deposited shall be disbursed for such purposes upon warrant of the secretary of State as are claims against the state of Oregon after approval thereof by the state highway commission."

Section 4496 provides that "the state highway commission is authorized and empowered to designate and define as state highways other and additional roads which from time to time they may deem of sufficient public importance, and may improve, better or pave the same."

By Section 4486, ''the state highway commission is hereby authorized and empowered to enter into contracts for the purpose of constructing the roads provided in this act * * and to do all things necessary and convenient to carry out the provisions of this act.''

Under these provisions and other provisions of the act creating the State Highway Commission and prescribing its duties and powers, it is clear that the legislature intended to create within the state, a system of public highways to be known as state highways, and to be under the exclusive dominion and control of the State Highway Commission, and to prohibit County Courts from any dominion or control over them. To accomplish that purpose, the legislature authorized the Commission to designate, construct and maintain such state highways, as in the judgment of the State Highway Commission should be constructed, and commanded the Commission to construct, not only the highways which were designated by the legislature as ''state highways,'' but also such highways as the Commission itself should designate.

It is a familiar principle of law that every grant of power carries with it the use and necessary means of its exercise. ''To employ the means, necessary to an end, is generally understood, as employing any means calculated to produce the end, and not as being confined to those single means without which the end would be entirely unattainable.'' 2 Story, Const., § 1248. ''The general rule upon this head of law is, that where the legislature gives power to a public body to do anything of a public character, the legislature means also, to give to the public body, all rights, without which the power would become wholly

unavailable, although such a meaning cannot be implied in relation to circumstances arising accidentally only.'' Beal's Cardinal Rules of Leg. Interp. (3 ed.), by Randall, p. 439.

Applying these principles to the statute creating the State Highway Commission, and prescribing its powers and duties, it is clear that the State Highway Commission, having been expressly granted the power to construct state highways, and having been expressly commanded to construct them, had power to construct this bridge and the approach, and that the fact that the river over which the bridge was constructed happened to be a boundary between two counties, or the fact that the end of the bridge happened to be within the corporate limits of an incorporated city, did not in any way limit the power of the Commission, since there was no prohibition in the act creating the Commission, forbidding it to construct a bridge or erect an approach to a bridge under the circumstances involved here. The power to build the bridge and the approach, using such part of the street as was necessary therefor, arises from the fact that the main purpose of the legislature in creating the Commission, and prescribing its duties, could not be accomplished without the exercise by the Commission of the power to build the bridge and the approach.

That this decision is not in conflict with anything said in *Less* v. *Butte, supra,* and *McGavrock* v. *Omaha, supra,* will be seen by an examination of those decisions. Assuming that the quotations contained in the petition for rehearing correctly state what was said by the courts in those two cases, we quote from the first case as follows:

''By the common law, municipal corporations were not held liable for consequential damages resulting

to property owners by reason of changes in street grades. The municipal authorities might change or alter the grades of public thoroughfares at will, and the adjoining owners had no redress. It was considered that, public improvements being for the good of the body politic, and always being in contemplation, the individual purchased his city or town property charged with knowledge that changes might be made as required by public necessity and convenience. So, too, when one platted a town site, and dedicated certain portions thereof to the public for streets, he and his grantees were presumed to contemplate the changes which would necessarily result from public improvements. The rule *damnum absque injuria* was held to apply to all such cases, unless the injury could be shown to have resulted from the negligent or improper manner in which the work was done. Such is the doctrine asserted in *Callender* v. *Marsh,* 1 Pick. (Mass.) 418, and other cases cited by appellant. The framers of our Constitution, abrogated this harsh rule by Section 14, article 3, which reads as follows: 'Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for the owner.' It seems very clear to us that this section was drafted in the broad language stated for the express purpose of preventing an unjust or arbitrary exercise of the power of eminent domain. It overturns the doctrine that one owning city or town property must continually live in dread of the changing whims of successive boards of aldermen. Constitutions which provide that 'private property shall not be taken for public use without just compensation' are but declaratory of the common law, and contemplate the physical taking of property only. Under constitutions which provide that property shall not be 'taken or damaged' it is universally held that 'it is not necessary that there be any physical invasion of the individual's property for public use to entitle him to compensation.''

In the second case we quote as follows:

"Section 21 of the 'Bill of Rights' (Constitution of 1875) is as follows: 'The property of no person shall be taken or damaged for public use without just compensation therefor.' In construing this section or the words 'or damaged' in the case of *City of Omaha* v. *Kramer,* 25 Neb. 489 (41 N. W. 295, 13 Am. St. Rep. 504), it was held: 'The words "or damaged," in section 21, article 1, of the Constitution, include all damages arising from the exercise of the right of eminent domain which cause a diminution in the value of private property.' And the opinion contains this statement in reference to the above section, viz.: 'The section above taken, except the words, "or damaged," was in the Constitution of 1867. Under that Constitution, if any portion of a person's real estate was taken for public use, he could recover all the damages sustained by the taking; but, if none of his real estate was taken for public use, he could recover nothing, although his property had been greatly damaged by such use.' The provision, therefore, is remedial in its nature; and the well-known rule that, in the construction of remedial statutes, three points are to be considered, viz., the old law, the mischief, and the remedy, and so to construe the act as to suppress the mischief and advance the remedy, is to be applied." 1 Bl. Com. 87.

4. It thus appears that those decisions were rendered under a Constitution which provided that "private property shall not be taken or damaged, etc."; the word "damaged" does not appear in the Constitution, and hence the common-law rule prevails in this state, since there is no statute changing or abrogating the rule. We are therefore bound by *Brand* v. *Multnomah County,* 38 Or. 79 (62 Pac. 209, 84 Am. St. Rep. 772, 50 L. R. A. 389).

We say that there is no statute changing the rule, for if the facts of this case had brought it within the application of Section 4562, that is to say, if plaintiffs' property had been located upon a county road,

there is no provision in Section 4562 from which an intention could be implied to abrogate the common-law rule prohibiting the recovery of consequential damages where no part of the property is taken for public use. The damages referred to in that section apply only in case private property is taken for public use, and had no application to a use made of a highway or county road, in order to facilitate convenience of public travel thereover. The word "damages" upon which so much stress has been placed has been used over and over again in every road law of this state, since the inception of the state government, and it has no different application now from what it had in all of the former acts applicable to county roads.

The petition recites that under the provisions of the charter of the City of Albany, that city would have been liable to plaintiff for damages resulting from the change of the grade of the street, if the city had made such change. If that is a fact, it is entirely outside of the record, and the city is not a party to this suit. The contractor is the sole defendant, and the case comes here upon appeal from a decree sustaining a motion for decree upon the pleadings. The fact, however, would be immaterial since the city did not make the change, although consenting to its being made.

5. But one other point need be noticed. In effect, plaintiff contends that what was said in our former opinion about plaintiffs being too late in enforcing their rights was equivalent to saying that because plaintiffs did not secure a preliminary injunction at the commencement of this suit, the expenditure of public moneys, although wrongful, rendered such expenditures legal. What we intended to say was, that

plaintiffs own property in the City of Albany and in the county of Linn, upon which they paid taxes and that as such taxpayers, if any moneys of the city or of the county were being illegally expended, they could before the same had been expended enjoin the unlawful expenditure thereof, and that having done so, they could not now as taxpayers enjoin the expenditure of moneys already expended.

For the reasons indicated, the petition for rehearing must be denied.     REHEARING DENIED.