Argued and submitted August 28, 1981; resubmitted In Banc
February 4, affirmed March 8, reconsideration denied May 4,
petition for review denied June 29, 1982 (293 Or 340)

# MULTNOMAH COUNTY et al,
*Respondents,*

*v.*

# TALBOT,
*Appellant,*
# AMBASSADOR APARTMENT ASSOCIATES et al,
*Intervenors - Appellants.*

## (No. A7905-02468, CA 19960)

641 P2d 617

Stephen T. Janik, Portland, argued the cause for appellants. With him on the briefs were E. Walter Van Valkenberg, and Stoel, Rives, Boley, Fraser and Wyse, Portland.

Richard E. Busse, Chief Deputy County Counsel, Portland, argued the cause for respondents. With him on the brief was John B. Leahy, County Counsel for Multnomah County, Portland.

BUTTLER, J.

Affirmed.

Joseph, C. J., dissenting opinion.

Gillette, J., dissenting opinion.

Warren, J., dissenting opinion.

**BUTTLER, J.**

In this appeal from the circuit court's reversal of an agency order entered in a non-contested case, three questions of statutory construction are presented: (1) does the circuit court have jurisdiction to review the state historic preservation officer's certification of certain real property as historic property under ORS 358.475 *et seq.*; (2) does a county tax assessor, or the county as an entity, have standing under ORS 183.480(1)[1] to contest that certification order; and (3) under ORS 358.485[2] must the property sought to be certified be listed in the National Register of Historic Places at the time an application is made?

## BACKGROUND

ORS 358.475 to 358.565 comprise a statutory scheme designed to encourage the maintenance and preservation of properties of Oregon historical significance. Under that scheme, an owner of historic property makes application during the calendar year preceding the first assessment year for which classification is requested. ORS 358.485. If the application is granted, the property is certified as historic and its assessed value for tax purposes is frozen for 15 years, assuming continuing qualification, at its true cash value at the time of application.[3] To qualify,

---

[1] ORS 183.480(1) provides:

"(1) Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form. A petition for rehearing or reconsideration need not be filed as a condition of judicial review unless specifically otherwise provided by statute or agency rule."

[2] ORS 358.485 provides:

"An owner of historic property desiring classification and assessment under ORS 358.475 to 358.545 shall make application to the county assessor upon forms approved by the Department of Revenue and consent in writing to the viewing of the property by the state historic preservation officer and any state advisory committee on historic preservation. Applications shall be made prior to December 31, 1975, for classification for the assessment year commencing January 1, 1976, and thereafter applications to the county assessor shall be made during the calendar year preceding the first assessment year for which classification is requested. Application for classification shall be granted only for those 15 consecutive assessment years immediately following the calendar year in which the application is made."

[3] The preservation officer, as a state agency (ORS 358.545), either grants or denies the application. He does not specify the date as of which the assessment is

property must, among other things, be currently listed in the National Register of Historic Places (National Register). The state historic preservation officer (preservation officer) rules on applications and generally administers the Act. The county assessor receives and forwards applications to the preservation officer, effectuates the special assessment if the applications are approved, requests a redetermination from the preservation officer if he thinks certified property no longer qualifies and removes the special assessment and assesses a penalty against property which loses its historic classification within the 15-year period.

Intervenors own a building, the Ambassador Apartment, in downtown Portland. On December 5, 1978, William Rosenfeld (one of the intervenors) submitted an application to the preservation officer requesting that the building be designated as historic property under the Act. At that time the building was not listed in the National Register, although an application for listing was then pending before the United States Department of Interior. The preservation officer, nevertheless, processed the application while waiting for the federal decision.[4]

The property was actually listed in the National Register on February 26, 1979, and thereafter was certified by the preservation officer on March 30, 1979. After the agency order was entered, Multnomah County and its Director of Assessment and Taxation filed in circuit court a petition for judicial review, seeking reversal of the preservation officer's certification order. Intervenors intervened

---

frozen; that date is fixed by the statutes and the assessment made by the assessor. Entitlement to the special assessment is determined as of January 1. Underlying the issues presented in this proceeding is the disagreement of the parties as to whether the assessed value is frozen as of January 1 of the year in which the application is made, or as of January 1 of the year immediately following the year of application. That question is not presented here, and we do not decide it. It is apparent, however, from the agency order that certification was to be effective commencing with the year 1979, which would mean that the preservation officer treated the application as having been made in 1978.

[4] The printed form of application for certification as historic property contains the representation that the property is currently listed in the National Register. That application was signed by intervenors even though the property was not then listed. It is that discrepancy which gave rise to this proceeding to review the agency order based on that application.

and, following a trial, the circuit court reversed the agency order. Intervenors appeal.

# I
# JURISDICTION

Petitioners sought judicial review under the Administrative Procedure Act (APA), specifically ORS 183.484, which vests jurisdiction in the circuit court for review of agency orders in other than contested cases. Intervenors contend, however, that notwithstanding that statute, jurisdiction is in the tax court by virtue of ORS 305.410,[5] which provides that the tax court shall have exclusive jurisdiction, subject to Supreme Court review, over "all questions of law and fact arising under the tax laws of this state." They argue that ORS 358.475 to 358.565 are tax laws, because they affect real property tax assessments on property classified as "historic property" thereunder; they also point out that those sections are not specifically excluded from the purview of ORS 305.410, whereas some other tax-related statutes are. *See* n 5, *supra*.

---

[5] ORS 305.410 provides:

"(1) Subject only to the provisions of ORS 305.445 relating to judicial review by the Supreme Court and to subsection (2) of this section, the tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state. For the purposes of this section, and except to the extent that they preclude the imposition of other taxes, the following are not tax laws of this state:

"(a) ORS 577.110 to 577.605 relating to beef council contributions.

"(b) ORS 576.051 to 576.584 relating to commodity commission assessments.

"(c) ORS chapter 477 relating to fire protection assessments.

"(d) ORS chapters 731, 732, 733, 734, 737, 743, 744, 746, 748 and 750 relating to insurance company fees and taxes.

"(e) ORS chapter 473 relating to liquor taxes.

"(f) ORS chapter 583 relating to milk marketing, production or distribution fees.

"(g) ORS chapter 767 relating to motor carrier taxes.

"(h) ORS chapter 319 relating to motor vehicle and aircraft fuel taxes.

"(i) ORS title 39 relating to motor vehicle and motor vehicle operators' license fees and boat licenses.

■    The difficulty with that argument is that ORS 358.495(3)[6] expressly provides for circuit court review, at the owner's instance, of the preservation officer's decision to *deny* historic property certification. The legislature's having provided that appeal of a *denial* of certification should not be treated as a case arising under the tax laws vesting exclusive jurisdiction in the tax court strongly suggests that the legislature did not consider the Act to be a tax law.[7] It further suggests that whatever judicial review is available, whether under the Act or under the APA,[8] lies in the circuit court.[9] That leaves the question, discussed

"(j)  ORS chapter 578 relating to wheat commission assessments.

"(k)  ORS chapter 462 relating to racing taxes.

"(L)  ORS chapter 657 relating to unemployment insurance taxes.

"(m)  ORS chapter 656 relating to workers' compensation contributions, assessments or fees.

"(n)  ORS chapter 579 relating to potato commission assessments.

"(o)  ORS 311.420, 311.425, 311.455, 311.650, 311.655 and ORS chapter 312 relating to foreclosure of real and personal property tax liens.

"(2)  The tax court, the circuit courts and district courts shall have concurrent jurisdiction to try actions or suits to determine the priority of property tax liens in relation to other liens.

"(3)  Except as permitted under section 2, amended Article VII, Oregon Constitution, this section and ORS 305.445, no person shall contest, in any action, suit or proceeding in the circuit court or any other court, any matter within the jurisdiction of the tax court."

[6] ORS 358.495(3) provides:

"(3) Any owner whose application for classification has been denied by the state historic preservation officer may appeal to the circuit court in the county where the land is located, or if located in more than one county, in that county in which the major portion is located."

[7] The dissent of Joseph, C. J., expresses the view that the Act is a tax law. However, the thrust of the Act is to preserve historical buildings, holding out tax incentives as an inducement to that end.

[8] The dissent of Gillette, J., concedes that the preservation officer is an "agency" under the APA by definition: *See* ORS 183.310(1). That opinion does not mention that the "agency" is not among those excluded from the provisions of the APA.

[9] Any other conclusion would result in split jurisdiction. ORS 358.490(2) permits the preservation officer to approve the application with respect to only part of the property which is the subject of the application. A dissatified owner would appeal such a decision to circuit court, but if the assessor were dissatisfied as well, intervenors would have him appeal to the tax court. That result would not

below, of whether anyone other than a disappointed owner may obtain judicial review under the APA of the action taken by the preservation officer when the issue is the validity of the agency order. That question relates to standing, not jurisdiction; the dissenting opinion of Warren, J.,[10] confuses those questions by tending to treat them as raising the same issue. They do not.

## II

## STANDING

The APA provides that, "any person adversely affected or aggrieved by an order" may seek judicial review. ORS 183.480(1). That phrase sets forth the criteria, under the APA, for "standing," and intervenors contend that neither petitioner satisfies the statutory requirement.

The parties have cited numerous cases articulating the standing "rule": a plaintiff must show he would be "substantially aggrieved by the enforcement of the rule,"

---

only be a waste of judicial resources, but could result in conflicting determinations. *See Jarvill v. City of Eugene,* 289 Or 157, 613 P2d 1, *cert den* 449 US 1013 (1980), where the Supreme Court characterized such split jurisdiction as "patently unreasonable" and one which the legislature could not have intended.

[10] That dissenting opinion appears to overlook the fact that review of orders granting certification and review of orders denying certification involve the same considerations. It concludes that the legislature may have intended that review take place in different courts, because an order denying certification has no direct tax consequences — it merely maintains the *"status quo ante"* — while an order granting certification has *only* tax consequences. 56 Or App at 251. That rationale fails to recognize, however, that if the reviewing court reverses an order denying certification, the *court's decision* has direct tax consequences; if, on the other hand, the court reverses an order granting certification, that *court's decision* maintains the *status quo ante.* If the legislature had in mind such a result-oriented method of determining which court should have jurisdiction, we think it would have considered the potential consequences of the reviewing court's decision, rather than the preservation officer's decision. (We note, incidentally, that, under the dissent's own analysis, the circuit court's reversal of the order here had no tax consequences.)

More important, we think that it is more sensible that tax court jurisdiction be determined by the kind of *factors* which the court must weigh in deciding the case and whether the tax court's expertise would be of advantage weighing them. We see no such advantage to tax court expertise here; neither do we see that these factors will vary because in one case the preservation officer happened to grant the application and in another he denied it. It is for this reason that the legislature's having provided that an appeal of a denial of certification should not be treated as a tax law for purposes of tax court jurisdiction strongly suggests to us that the legislature did not consider the Act to be a tax law. Its principal function is that of historic preservation; a frozen tax assessment is an inducement to achieve that end.

*Gortmaker v. Seaton,* 252 Or 440, 450 P2d 547 (1969); or show a "substantial interest in the matter in controversy," *Ore. Newspaper Pub. v. Peterson,* 244 Or 116, 415 P2d 21 (1966); or show "some injury or impact on a legally recognized interest beyond an abstract interest in the correct application * * * of a law." *Budget Rent-A-Car v. Multnomah Co.,* 287 Or 93, 95, 597 P2d 1232 (1979).

Those cases consider standing in a variety of contexts and under various statutes, but none deals with the situation where, as here, an Oregon public official or governmental entity seeks review under the APA of another agency's order or rule. They demonstrate, however, that standing requires more than the abstract interest of a busybody in the question presented. A basic element of the policy underlying the standing requirement was stated by the United States Supreme Court in *Flast v. Cohen,* 392 US 83, 99, 88 S Ct 1942, 20 L Ed 2d 947 (1968)[11]:

"* * * The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' * * *"

*See also, Gortmaker v. Seaton, supra,* 252 Or at 444.

Here, the substantive question is whether the preservation officer correctly applied the statutory provisions insofar as he treated the application as having been made in 1978. The answer affects the duty of the county assessor in fixing the assessed value of the Ambassador Apartment. The county assessor is an integral part of the statutory scheme. Not only is the assessor the person to whom applications for classification are made (ORS 358.485), that officer must be notified of the historic certification within ten days after it is made, and he must enter that fact on the assessment and tax roll each year the property is so classified. ORS 358.495. The assessor must, for 15 consecutive assessment years, assess the property at its true cash value at the time application was made. ORS 358.505(1).

---

[11] Although federal standing decisions turn on a sometimes confused mixture of constitutional "cases and controversies" limitations and pure policy considerations concerning the right of a particular party to litigate the issues presented, the quoted language focuses on the latter.

He also has the duty, if he has reason to believe that property ceases to qualify as historic property, to request that the preservation officer determine if the property continues to qualify; when so requested, the preservation officer must take whatever steps are necessary to make that determination and to notify the assessor thereof within 120 days after the request is received. ORS 358.509. When and if the property becomes disqualified, the assessor has a statutory duty to determine and collect a penalty to be added to the tax on the property. ORS 358.525.

■ Clearly, the assessor is not a disinterested bystander. He has a statutorily imposed involvement under the legislative scheme. In particular, we believe he has a legally cognizable interest in assuring that the date as of which the assessed value of classified property is frozen is correctly determined. That interest is an adversary one in this case. In fact, the assessor may be the most vigorous, and perhaps the only, challenger in this kind of case, because the interest of an individual county taxpayer, who, intervenors argue, *would* have standing, may be too insubstantial to satisfy the standing requirement; it may also be unrealistic to expect an individual taxpayer to challenge, or even to be aware of, the order involved here.[12] Both the assessor and the county may properly assert the position that the effective operation of county government requires that the assessed value of real property within its taxing authority be as accurate as possible in order that property taxes be imposed equitably. Both have a substantial interest in correcting a determination which will result in an assessment which is improper as a matter of law, as contended here.

This conclusion is supported by cases from other jurisdictions. Cases which have denied standing to a tax assessor to challenge an agency decision favorable to a taxpayer (few involved a political subdivision as an entity),

---

[12] The Rhode Island Supreme Court has stated:

"Furthermore, the public interest exception [to the general, restanding requirement] has been liberally applied to permit an agency to challenge a decision which, right or wrong, might otherwise be completely shielded from judicial review. * * *" *Matunuck Beach Hotel, Inc. v. Sheldon,* 399 A2d 489, 493 (RI 1979).

have usually involved a subordinate seeking review of the decision of a superior agency which overruled him.[13] Therefore, apart from the subordinate's mere "pride of opinion," both parties represent "identical interests," so there is insufficient adversity. But where one government agency has challenged the actions of another government agency, *see, e.g., United States v. I.C.C.,* 337 US 426, 69 S Ct 1410, 93 L Ed 1451 (1949); or where there are "conflicting geographic loyalties of disputing public administrative bodies," Davis, *Standing of a Public Official to Challenge Agency Decisions: A Unique Problem of State Administrative Law,* 16 Admin L Rev 163, 173 (1964); or where there is no statutory relationship of superiority and the challenging official is outside the decisional process, *Iowa Dept. of Revenue v. Iowa St. Bd. of Tax Review,* 267 NW2d 675 (Iowa 1978), genuine adversity is reasonably assured, and standing has generally been allowed.

Here the various exceptions come together: petitioners and the preservation officer represent different interests (taxation versus historical preservation) and have conflicting geographic loyalties; there is no statutory relationship of superiority of one over the other, and neither petitioner had any part in the agency's decisional process.

Intervenors argue, however, that apart from whether petitioners satisfy ORS 183.480(1), the legislature's failure to provide expressly for the review of a *grant* of historic status, coupled with an express provision for review of the *denial* of historic status, evidences the legislature's intention that petitioners should not have "standing" to contest the certification order. That argument, however, goes less to the question of standing than it does to whether an order granting historic status is reviewable at all. In any event, considering the paramount interest of government at all levels in the equitable distribution of the tax burden, the duties of the assessor to insure that owners of historic property comply with the Act, and the undesirability of lodging unreviewable power in one official to

---

[13] *E.g., Iowa Dept. of Revenue v. Iowa St. Bd. of Tax Review,* 267 NW2d 675 (Iowa 1978); *Fadell v. Kovacik,* 242 Ind 610, 181 NE2d 228 (1962); *McTaggart v. Public Service Commission,* 168 Mont 155, 541 P2d 778 (1975); *Mortensen v. Pyramid Sav. & L. Ass'n of Milwaukee,* 53 Wis 2d 81, 191 NW2d 730 (1971).

bestow a substantial tax benefit, we would require an indication of legislative intent clearer than mere silence before we would foreclose "standing" to litigants where standing is otherwise proper under the APA.

### III
### THE MERITS

ORS 358.485 provides that: "An owner of *historic property* desiring classification and assessment under ORS 358.475 to 358.545 shall make *application* to the county assessor * * *," (emphasis supplied) who, in turn, refers the application to the preservation officer for processing and decision. ORS 358.490(1). " 'Historic property' means real property that is *currently listed* in the National Register of Historic Places * * *." (Emphasis supplied.) ORS 358.480(1). If the application is approved, the property is assessed for the next 15 years at its true cash value "at the time application under ORS 358.485 was made." ORS 358.505(1).[14]

The question is whether the preservation officer had statutory authority to treat the application as being made at a time when the property was not listed in the National Register, but became listed before certification, or whether the application may not be treated as made until the property is listed in the National Register. That question is important, because the answer determines when an application is made for purposes of determining the date as of which the assessed valuation is frozen under ORS 358.505(1). Here, intervenors submitted an application in 1978 for special assessment treatment commencing in 1979, but the property was not listed in the National Register until February 1979. Whether the application was "made" within the meaning of the statute in 1978 or in 1979 will determine the date as of which the assessment is frozen.

■ ■ Petitioners argue, and we agree, that the meaning of ORS 358.485 is clear on its face: property is not "historic

---

[14] ORS 358.505(1) provides:

"(1) Notwithstanding ORS 308.232, the county assessor shall, for the 15 consecutive assessment years elected under ORS 358.485, assess property classified as historic property at the true cash value of the property at the time application under ORS 358.485 was made."

property" within the meaning of the statute unless it is currently listed in the National Register. It must not only be listed, but must be listed at the time in question in order for the owner of the property to be an owner of "historic property" for the purpose of making an application. Intervenors attempt to introduce ambiguity by focusing solely on the definition contained in ORS 358.480(1) and arguing that one does not know whether "currently listed" means listed at the time of passage of the statute, at the time of application, or at the time of certification. In the abstract, there are other possibilities, as well. However, we do not treat the definition in the abstract; we consider it in the context of the statutory scheme to which it applies. In that context, whenever the phrase "historic property" is used, it means property then listed in the National Register, *e.g.*, at the time application is made, at the time certification is granted, and prior to July 1 of each of the 15 years during which special assessment is sought. ORS 358.505(2); 358.515(3).[15]

Intervenors' arguments to the contrary would not only fly in the face of what we believe to be the clear meaning of the statutes, but would result in an open-ended application process which would encounter problems with the provisions of ORS 358.495(1), which provides:

"(1) The state historic preservation officer shall immediately notify the county assessor and the applicant of his approval or disapproval of the application which shall in no event be later than April 1 of the year following the year of receipt of the application. An application not denied by April 1 shall be deemed approved, and the property which is the subject of the application shall be considered

------

[15] ORS 358.505(2) provides:

"(2) The entitlement of property to the special assessment provisions of this section shall be determined as of January 1. However, if property so qualified becomes disqualified prior to July 1 of the same year, it shall be assessed at its true cash value as defined by law without regard to this section. If the property becomes disqualified on or after July 1, its assessment for that year shall continue as provided in this section."

ORS 358.515(3) provides:

"(3) When, for any reason, the property or any portion thereof ceases to qualify as historic property as defined in ORS 358.480, the owner at the time of change shall notify the assessor of the change prior to the next January 1 date."

to be historic property which qualifies under ORS 358.475 to 358.545."

To avoid the problem of an automatic granting of historic property status to property not listed by April 1 of the year following the year in which the application is submitted, intervenors urge that we imply an automatic denial of the application if the property is not listed by that date. However, the language of the statute is clear and unambiguous and we may not add language that is not there. ORS 174.010.[16]

In sum, we agree with the trial court that the preservation officer misinterpreted and, therefore, misapplied, the statutes in determining the effective date of the application, which, in turn, determines the date as of which the tax assessment is frozen. The trial court order reversing the agency order is affirmed. ORS 183.484(4)(a).[17]

Affirmed.

**JOSEPH, C. J.,** dissenting.

I concur in the dissents of Judges Gillette and Warren. Nonetheless I want to point out distinctly that in no event can this litigation be in any court but the tax court, which is a "circuit court" when it adjudicates, ORS 305.405, and is "the sole, exclusive and final judicial authority * * * under the tax laws of this state." ORS 305.410. The Oregon Classification of Historic Property Act is a complete statutory scheme (sic) for giving owners of certain real property special tax preferences. It is a tax law, and

---

[16] ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

[17] ORS 183.484(4)(a) provides:

"(4)(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the acorrect interpretation of the provision of law."

jurisdiction rests entirely in the tax court as a circuit court. *Semble:Jarvill v. City of Eugene,* 289 Or 157, 613 P2d 1, *cert denied* 449 US 1013 (1980).

**GILLETTE, J.,** dissenting.

As the lead opinion indicates, ORS 358.475 to 358.565, the Oregon Classification of Historic Property Act, comprise a "statutory scheme." (Slip opinion at 1.) To this, I would add the word, "complete." That is: the Oregon Classification of Historic Property Act is a complete statutory scheme fully establishing the rights and duties of all parties, public and private, with respect to the identification and designation of property of historical significance.

This complete statutory scheme for the classification of historic property has its own statement of policy, ORS 358.475, its own definitions, ORS 358.480, its own method of application for special tax assessment status, ORS 358.485, its own governmental entity—the "state historic preservation officer"—for handling the process, ORS 358.565, and its own special (and limiting) method of assessment, ORS 358.505, among other provisions. Within this statutory scheme, there is a single, limited right to appeal conferred upon property owners alone by ORS 358.495(3):

"* * * * *

"(3) Any owner whose application for classification has been denied by the state historic preservation officer may appeal to the circuit court in the county where the land is located, or if located in more than one county, in that county in which the major portion is located."

In my view, this provision of a limited right of appeal for only one party interested in the classification process excludes appeal by others under this Act or the Administrative Procedures Act (APA).

No one seems to seriously dispute the proposition that the "state historic preservation officer" is a state agency, for APA purposes. ORS 183.310 defines an "agency" as

"* * * any board, commission, department, or division thereof, *or officer authorized by law to make rules* or to issue orders, except those in the legislative and judicial branches." (Emphasis supplied.)

The state historic preservation officer is authorized to make rules. ORS 358.545. Because he is an agency for APA purposes, the officer's classification decision in these cases would, under the APA, be an "order in other than a contested case." ORS 183.484. *See* ORS 183.480. Judicial review of such an order would normally lie in either Marion County or the county "* * * in which the petitioner resides or has a principal business office." ORS 183.484(1). A petition for review of such an order, to have standing, must show that he is "adversely affected or aggrieved." ORS 183.484(3). The reviewing court may

"* * * affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record." ORS 183.484(4).

Obviously, a property owner denied classification by the state historic preservation officer is a person "adversely affected or aggrieved" by a final agency order in other than a contested case pursuant to ORS 183.484, if the APA applies to this kind of decision. But, if it does, what is the function of ORS 358.495(3)? What does the right to "appeal" to circuit court, as provided by this latter statute, give a property owner that he did not already have under ORS 183.484? While the language of the two statutes is different, I cannot perceive any way in which a circuit judge proceeding under ORS 358.495(3) would have any *greater* authority under that statute than if he were instead conducting a standard APA review. In only one sense are

the statutes significantly different under the plain language of ORS 358.495(3), *only the property owner has standing.*

The foregoing descriptive analysis of the pertinent statutes leads me to the conclusion that the APA provisions concerning review of orders in other than contested cases *do not apply* to classification decisions under the Oregon Classification of Historic Property Act. If they did, ORS 358.495(3)—which grants standing to a much narrower class than does ORS 183.484—would be a meaningless redundancy.

Having concluded that the APA does not apply to this proceeding, it follows that the parties who brought this petition for judicial review in circuit court had no standing to do so. I would reverse and remand the matter with instructions that it be dismissed.

I respectfully dissent.[1]

Joseph, C. J. and Warden, J., join in this dissent.

**WARREN, J.,** dissenting.

I dissent because it appears clear to me that the circuit court had no jurisdiction to entertain the appeal from the state historic preservation officer's decision to *approve* the classification of the subject property as historic property.

ORS 358.495 on its face does not authorize such an appeal. It provides:

"(1)  The state historic preservation officer shall immediately notify the county assessor and the applicant of his approval or disapproval of the application * * *.

"* * * * *

"(3)  Any *owner* whose application for classification has been *denied* by the state historic preservation officer land is located, or if located in more than one county, in

---

[1] I agree with much that is said in the separate dissenting opinion of Warren, J., but I would decide this case as a matter of *standing* rather than jurisdiction. Because of the disposition I would make of this case, I would not reach the question addressed by the separate dissenting opinion of Joseph, C. J., although that opinion may correctly assess the problem it addresses.

that county in which the major portion is located."
(Emphasis added.)

It is inconceivable to me that the legislature, having dealt
with both the question of approval and disapproval of the
application in subsection (1) and appeal to circuit court in
subsection (3) in the case of an "owner whose application
* * * has been denied," can fairly be said to have intended
to allow an appeal to circuit court by the county or its
assessor when an application has been allowed. The major-
ity does not fully articulate its reasoning in concluding the
circuit court had jurisdiction over an appeal from an
*allowed* application. Its reasoning, however, appears to be as
follows: while acknowledging the fact that appeal to circuit
court is specifically authorized only in the case of an owner
whose application is denied, the majority concludes that the
legislature probably did not consider the act to be a tax law,
because otherwise tax court review rather than circuit court
review would have been expressly provided for appeals of
both denied and allowed applications. Therefore, circuit
court review must have been intended for allowed applica-
tions as well.

The act, however, may have both tax and non-tax
aspects which the legislature could have concluded war-
ranted judicial review in different forums. One reason,
among others which may be imagined, why orders denying
historic classification were made reviewable in circuit court,
while others were not, is that a denial of historic status
results in no direct tax consequences, but maintains the
*status quo ante* for tax purposes. Allowance of the classifica-
tion, on the contrary, has only tax consequences. Among
the questions which might arise after an order allowing
certification are the proper assessed value and the proper
date as of which the assessment is frozen pursuant to the
act. Those questions are questions arising under the tax
laws.

If the legislature considered challenges to orders
denying applications not to raise tax questions, how that
justifies a conclusion, inherent in the majority opinion, that
it must also have considered that orders allowing applica-
tions likewise raise no questions arising under the tax laws
escapes me. First, it ought to be sufficient that no

challenge to an order granting an application is authorized in circuit court. Second, the challenge being made in this case by appellants is in substance merely a challenge to the qualification of the property for a special tax assessment as of January 1, 1979, rather than January 1, 1980. The question of the proper date as of which the assessment is frozen pursuant to the act, is a question arising under the tax laws. The challenge here made then is within the exclusive jurisdiction of the tax court. ORS 305.410. I do not agree with the majority that, because circuit court review is provided in cases of denied applications, it is inherent in the legislation that there be circuit court review of orders granting historical property classification when it enacted ORS 358.495. When an application is allowed, review of the consequences of the allowed classification is otherwise legislatively provided for. The assessor is specifically authorized to challenge qualifications of property for the special assessment. ORS 358.509. However, entitlement to a special assessment is a question within the jurisdiction of the tax court. *C.f. Corp. Presiding Bishop v. Dept. of Rev.,* 6 OTR 268 (1975).

If the legislative decision to permit review in circuit court of some, but not all, questions arising under chapter 358 results in split jurisdiction (*see* majority opinion, n 7), that decision is no proper concern of ours.

The most distressing aspect of the majority opinion is its inconsistency on the subject of judicial legislation. The majority refers to ORS 174.010 in declining to add language to ORS 358.495(1), noting that "* * * the language of the statute is clear and unambiguous and we may not add language that is not there." 56 Or App at 247.) But that is precisely what it has done with respect to subsection (3) of the same statute. ORS 358.495(3) does not provide for circuit court review of orders allowing classification of historic property. The majority simply adds to the statute what it perceives the legislature should have included.

In *Lane County v. Heintz Const. Co. et al,* 228 Or 152, 364 P2d 627 (1961), the Supreme Court said:
"Turning to the applicable rules of law by which to test the defendants' premise, we first take note that the court is

not authorized to rewrite a statute or to ignore the plain meaning of unambiguous words to correct the action of the legislature, or, in this instance, the action of the Board of County Commissioners of Lane [C]ounty.

" "* * * The court's province, after all, is to ascertain what the legislature intended from *the language used,* with such aid as may be found in the rules of interpretation and legitimate extrinsic sources; to construe statutes, not to enact them; to declare what the legislature has done, not what it should have done. * * *' *Fullerton v. Lamm,* 177 Or 655, 670, 163 P2d 941, 165 P2d 63.

"The rule by which courts must be guided was clearly stated by Mr. Justice Rand in *Barrett v. Union Bridge Co.,* 117 Or 566, 570, 245 P 308, 45 ALR 527:

" 'Section 715, Or. L. [now ORS 174.010], directs that the courts in the construction of statutes, are "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, nor to omit what has been inserted." We ought never to import into a statute words which are not to be found there, unless from a careful consideration of the entire statute it be ascertained that to import such words is necessary to give effect to the obvious and plain intention and meaning of the legislature. * * *' " (Emphasis in original.) 228 Or at 157-158.

These limitations on our proper function should not be disregarded and, therefore, I respectfully dissent.

Joseph, Chief Judge, and Warden, Judge, join in this dissent.